**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AT HOME GROUP INC., *et al.,*[1]<br><br>　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 25-11120 (JKS)<br>(Jointly Administered)<br><br>Hearing Date: August 14, 2025 at 2:00 p.m. (ET)<br>Objection Deadline: August 7, 2025 at 4:00 p.m. (ET)<br><br>Re: D.I. 376 |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) THE SOLICITATION AND VOTING PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS' JOINT CHAPTER 11 PLAN, (III) THE FORM OF BALLOT AND NOTICES IN CONNECTION THEREWITH, (IV) CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Regions Three & Nine ("U.S. Trustee"), through his counsel, files this objection (the "Objection") to the *Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan, (III) the Form of Ballot and Notices in Connection Therewith, (IV) Certain Dates and Deadlines with Respect*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: At Home Group Inc. (9563); Ambience Parent, Inc. (6231); Ambience Intermediate, Inc. (0692); At Home Holding II Inc. (9755); At Home Holding III Inc. (9930); At Home Companies LLC (6921); At Home Stores LLC (4961); At Home RMS Inc. (5235); At Home Gift Card LLC (0357); At Home Procurement Inc. (1777); At Home Properties LLC (2759); At Home Assembly Park Drive Condominium Association (N/A); 1600 East Plano Parkway, LLC (4757); 1944 South Greenfield Road LLC (4377); 2301 Earl Rudder Frwy S LLC (N/A); 3551 S 27th Street LLC (9350); 300 Tanger Outlet Blvd LLC (N/A); 3002 Firewheel Parkway LLC (2759); 2016 Grand Cypress Dr LLC (N/A); 8651 Airport Freeway LLC (0523); Transverse II Development (8595); Rhombus Dev, LLC (4783); 1000 Turtle Creek Drive LLC (9177); 19000 Limestone Commercial Dr, LLC (3711); 4801 183A Toll Road, LLC (3909); 7050 Watts Rd LLC (N/A); 4700 Green Road LLC (9049); 361 Newnan Crossing Bypass LLC (N/A); 4304 West Loop 289 LLC (4302); 10460 SW Fellowship Way LLC (N/A); 1720 N Hardin Blvd LLC (N/A); Compass Creek Parkway LLC (N/A); 10800 Assembly Park Dr LLC (6145); Nodal Acquisitions, LLC (N/A); 15255 N Northsight Blvd LLC (N/A); 3015 W 86th St LLC (N/A); 9570 Fields Ertel Road LLC (N/A); 1376 E. 70th Street LLC (9942); 11501 Bluegrass Parkway LLC (3626); 12990 West Center Road LLC (9396); 334 Chicago Drive, LLC (2864); and 4200 Ambassador Caffery Pkwy LLC (5119). The location of the Debtors' service address for purposes of these chapter 11 cases is: 9000 Cypress Waters Blvd, Coppell, Texas 75019.

*Thereto, and (V) Granting Related Relief* ("Solicitation Motion," D.I. 376), and in support of his Objection states:

## PRELIMINARY STATEMENT

1. The Solicitation Motion should not be approved due to provisions in the proposed plan that render it unconfirmable. First, in contravention of United States Supreme Court precedent and applicable state law, the plan extracts non-consensual third-party releases from entities who vote in favor of the plan. But voting in favor of the plan does not supply the affirmative consent to third party releases required under state law. Moreover, because the Debtors seek this Court's authorization to procure non-consensual third-party releases via the solicitation procedures, this issue should be addressed at the Disclosure Statement stage. The Court should not authorize the Debtors to solicit votes and waste estate resources unless the plan's third-party releases are fully consensual -- that is, by opt-in as to the proposed releasors. Second, to the extent that exculpation is permitted beyond the provisions of 11 U.S.C. § 1125(e), the exculpation clause extends to nonfiduciary parties, when the Third Circuit requires that the clause be limited to post-petition, pre-effective date actions of estate fiduciaries.

## JURISDICTION AND STANDING

2. Under (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine the Disclosure Statement Motion and this Objection.

3. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U. S. Trustee's overarching responsibility to enforce

the bankruptcy laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4. Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment on such plans and disclosure statements.

5. The U.S. Trustee has standing to be heard on the Disclosure Statement and the Disclosure Statement Motion pursuant to 11 U.S.C. § 307. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

6. On June 16, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7. On June 27, 2025, the U.S. Trustee appointed an official committee of unsecured creditors. [D.I. 197].

8. On July 7, 2025, the Debtors filed the disclosure statement and plan and on July 24, 2025, Debtors filed the Solicitation Motion that seeks approval of the disclosure statement and certain procedures concerning voting solicitation of the plan. The U.S. Trustee has provided informal comments regarding the disclosure statement and the plan and debtors agreed to make a number of changes. The revised disclosure statement [D.I. 392] (as amended, "<u>Disclosure Statement</u>") and revised plan [D.I. 391] (as amended, "<u>Plan</u>") were filed on July 29, 2025. The

only issues that remain unresolved as to the Solicitation Motion[2] are the provisions in the Plan imposing releases on third-party claimholders who vote to accept the Plan and the provision exculpating non-fiduciary parties.

9. The third-party release provision in the Plan (the "Third-Party Release") states in relevant part that "each Releasing Party is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Claims and Causes of Action. . . ." Plan, Art. VIII.D. Simply put, all parties, except those voting to accept the Plan, must mark the "opt-in" box to be bound by the Third-Party Release.

10. The Third-Party Releases apply to (a) all Holders of Claims that vote to accept the Plan; (b) all Holders of Claims that are deemed to accept the Plan and that affirmatively opt into the releases provided for in the Plan; (c) all Holders of Claims that abstain from voting on the Plan and that affirmatively opt into the releases provided for in the Plan; (d) all Holders of Claims that vote to reject the Plan and that affirmatively opt into the releases provided for in the Plan; and (e) all Holders of Interests that affirmatively opt into the releases provided for in the Plan.

11. The Plan, Article I.A , at 144, defines "Releasing Parties" as follows:

> "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) the Ad Hoc Group and each Consenting Stakeholder; (d) the DIP Lenders; (e) the ABL Secured Parties; (f) the DIP Agent; (g) the Agents/Trustees; (h) the Consenting Sponsor; (i) all Holders of Claims that vote to accept this Plan; (j) all Holders of Claims that are deemed to accept this Plan and that affirmatively opt into the releases provided for in this Plan; (k) all Holders of Claims that abstain from voting on this Plan and that affirmatively opt into the releases provided for in this Plan; (l) all Holders of Claims that vote to reject this Plan and that affirmatively opt into the releases provided for in this Plan;

---

[2] The U.S. Trustee may assert additional objections to confirmation of the Debtor's Plan. This objection is limited to adequacy of disclosure objections and objections that should be addressed prior to solicitation of the Debtors' Plan. The U.S. Trustee reserves all of his objections to confirmation.

(m) all Holders of Interests that affirmatively opt into the releases provided for in this Plan; (n) each current and former Affiliate of each Entity in clause (a) through the preceding clause (m); and (o) each Related Party of each Entity in clauses (a) through the preceding clause (n) for which such Entity is legally entitled to bind such Related Party to the releases contained herein under applicable law; provided that in each case, an Entity in clause (j) through clause (m) shall not be a Releasing Party if it: (x) was provided with an opportunity to opt in to the releases described in Article VIII.D of this Plan by returning an "opt in" form and did not do so; or (y) timely objects to the releases contained in Article VIII.D of this Plan and such objection is not resolved before Confirmation.

12. The Plan, Article I.A., at 143, defines "Released Parties" as follows:

"Released Parties" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) the Ad Hoc Group and each Consenting Stakeholder; (d) the DIP Lenders; (e) the ABL Secured Parties; (f) the DIP Agent; (g) the Agents/Trustees; (h) the Consenting Sponsor; (i) At Home Cayman; (j) At Home Cayman Holdings; (k) each current and former Affiliate of each Entity in clause (a) through the preceding clause (j); and (l) each Related Party of each Entity in clauses (a) through the preceding clause (k); provided that, in each case, an Entity shall not be a Released Party if it: (x) was provided with an opportunity to opt in to the releases described in Article VIII.D of this Plan by returning an "opt in" form and did not do so; or (y) timely objects to the releases contained in Article VIII.D of this Plan and such objection is not resolved before Confirmation.

13. The exculpation clause in the Plan (the "Exculpation Clause") states in relevant part that each Exculpated Party is exculpated from any Claim or Cause of Action arising between the Petition Date and the Effective Date in connection with Chapter 11 Cases. *See* Plan, Art. VIII.E.

14. The Plan, Article I.A., at 84, defines "Exculpated Parties" as follows:

"Exculpated Parties" means, collectively, and in each case solely in its capacity as such: (a) each of the Debtors; (b) the Reorganized Debtors; (c) with respect to the Debtors, each of their respective current and former directors, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date; and (d) the Professionals retained by the Debtors during the Chapter 11 Cases.

15.     Article VIII.F of the Plan also enjoins entities who hold any cause of action, from pursuing any action against the Released Parties and Exculpated Parties.[3]

## ARGUMENT

*A.     The Solicitation Motion Should Not Be Approved Because the Plan Is Not Confirmable.*

16.     If a plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied. *See In re Quigley Co.,* 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007) *(*citing *In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003)); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y.) *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992); *In re Filex, Inc.*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990)).  The Plan is unconfirmable because it proposes non-consensual third-party releases that are not authorized under the Bankruptcy Code and, to the extent that exculpation is permitted beyond the provisions of 11 U.S.C. § 1125(e), the Exculpation Clause exculpates parties that are not fiduciaries of the Debtors.

17.     The Supreme Court held in *Harrington v. Purdue Pharma L.P.* that bankruptcy courts cannot involuntarily alter relationships between non-debtors by imposing nonconsensual releases of, or injunctions barring, claims between them.  603 U.S. 204, 209, 227 (2024).  The

---

[3] *Purdue* held that non-consensual third-party injunctions are generally not permitted by the Bankruptcy Code. *See Purdue*, 603 U.S. at 227. As the *Purdue* court noted, the Bankruptcy Code allows courts to issue an injunction in support of a non-consensual, third-party release in exactly one context: asbestos-related bankruptcies, and these cases are not asbestos-related. *See id.* at 222 (citing 11 U.S.C. § 524(g)).  Even if the third-party release was consensual, that would not mean that the court has authority to impose an injunction. An injunction is critically different from a consensual non-debtor release. The legal effect of a consensual release is based on the parties' agreement. *See Continental Airlines Corp. v. Air Line Pilots Assn., Int'l (In re Continental Airlines Corp.),* 907 F.2d 1500, 1508 (5th Cir. 1990) (holding that for settlement provisions "unrelated to substantive provisions of the Bankruptcy Code," "the settlement itself is the source of the bankruptcy court's authority"). The non-debtor parties themselves are altering their relations; the court is not using its judicial power to effect that change. An injunction, by contrast, relies on the court's power to enter orders binding on parties. The court must therefore have both constitutional and statutory authority to enter an injunction. And, once such jurisdiction and authority are established, the court still must determine that an injunction is warranted. But jurisdiction, authority, and a showing that injunctive relief is warranted are all absent here. As such, the U.S. Trustee reserves all rights to object to the injunction at confirmation.

Court did not prohibit chapter 11 plans from memorializing consensual third-party releases, and it did not "express a view on what qualifies as a consensual release." *Id*. at 226.

18.     A consensual third-party release is a separate agreement between non-debtors governed by nonbankruptcy law. As the Supreme Court recognized in *Purdue*, a release is a type of settlement agreement. *Purdue*, 603 U.S. at 223 (explaining that what the Sacklers sought was not "a traditional release" because "settlements are, by definition, consensual") (internal quotations omitted). A bankruptcy court can acknowledge the parties' agreement to a third-party release, but the authority for a consensual release is the agreement itself, not the Bankruptcy Code. If a claim has been extinguished by virtue of the agreement of the parties, then the court is not using the forcible authority of the Bankruptcy Code or the bankruptcy court to extinguish property rights. Here, there is no existing release agreement between non-debtors. Debtors instead seek a confirmation order that would use the power of the court to impose a third-party release on claimants without their affirmative and voluntary consent. Such a confirmation order would impermissibly alter the relations between non-debtors because a valid release does not exist under nonbankruptcy law.

19.     Three inconsistent tests have been suggested for determining whether a third-party release included in a bankruptcy court order is consensual: (1) it is only consensual when there is valid consent under applicable state contract law[4]; (2) parties who do not opt out can be deemed to have consented because class-action settlements are binding on those who do not opt out[5]; and (3) parties can be deemed to have consented the same way that a litigant may forfeit rights by

---

[4] *See, e.g., In re Smallhold, Inc.*, 665 B.R. 704, 720 (Bankr. D. Del. 2024); *Emerge Energy Services, LP,* No. 19-11563, 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019); *In re Digital Impact, Inc.*, 223 B.R. 1, 14-15 (Bankr. N.D. Okla. 1998); *In re Arrowmill Dev. Corp.,* 211 B.R. 497, 507 (Bankr. D.N.J. 1997).

[5] *See, e.g., In re Robertshaw US Holding Corp.,* 662 B.R. 300, 323 n.120 (Bankr. S.D. Tex. 2024).

failing to timely respond in litigation.[6] The first test is the correct one. State law governs whether non-debtors have agreed to release each other. Nothing in the Bankruptcy Code allows parties to disregard state law when debtors seek to impose third-party releases in their plans. Under Delaware law, as in other states, silence is not acceptance of an offer other than in limited circumstances inapplicable here. Debtors thus cannot deem those who failed to opt out as having released claims because those claimants have not agreed to the third-party release under state law.

**B.      *State Contract Law Applies.***

20.     "[T]he basic federal rule in bankruptcy is that state law governs the substance of claims." *Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-451 (2007) (internal quotations omitted); *accord Butner v. United States*, 440 U.S. 48 (1979). Thus, courts apply state law when the question is whether a debtor has entered a valid settlement agreement. *See Houston v. Holder (In re Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995) ("Federal bankruptcy law fails to address the validity of settlements and this gap should be filled by state law."); *De La Fuente v. Wells Fargo Bank, N.A. (In re De La Fuente)*, 409 B.R. 842, 845 (Bankr. S.D. Tex. 2009) ("Where the United States is not a party, it is well established that settlement agreements in pending bankruptcy cases are considered contract matters governed by state law.").

21.     The rule is no different for third-party releases. They are separate agreements between non-debtors governed by state law. Unlike a bankruptcy discharge, which "is an involuntary release by operation of law," "[i]n the case of voluntary releases, the nondebtor is released from a debt, not by virtue of 11 U.S.C. § 1141(b), but because the *creditor agrees to do*

---

[6] *See, e.g., In re Arsenal Intermediate Holdings, LLC*, No. 23-10097, 2023 WL 2655592, at *5-*6 (Bankr. D. Del. Mar. 27, 2023), *abrogated by Smallhold, Inc.*, 665 B.R. at 716; *In re LATAM Airlines Grp. SA*, 2022 WL 2206829, at *46 (Bankr. S.D.N.Y. June 18, 2022); *In re Mallinckrodt PLC*, 639 B.R. 837, 879-80 (Bankr. D. Del. 2022).

*so.*" *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 503, 507 (Bankr. D.N.J. 1997) (emphasis in original). *See also Continental Airlines Corp. v. Air Line Pilots Assn., Int'l (In re Continental Airlines Corp.)*, 907 F.2d 1500, 1508 (5th Cir. 1990) (holding that for settlement provisions "unrelated to substantive provisions of the Bankruptcy Code," "the settlement itself is the source of the bankruptcy court's authority"). Thus, "the Bankruptcy Code has not altered the contractual obligations of third parties, the parties themselves have so agreed." *Arrowmill*, 211 B.R. at 507.

22.     Because the Bankruptcy Code does not authorize the imposition of an involuntary release, *Purdue*, 603 U.S. at 209, 227, the release must be consensual under non-bankruptcy law. There is no Bankruptcy Code provision that preempts otherwise applicable state contract law governing releases between non-debtors. *See, e.g., Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (plurality) ("For where neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a federal court to supply one, 'state law must govern because there can be no other law.'") (quoting *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965)); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Section 105(a), for example, "serves only to carry out authorities expressly conferred elsewhere in the code." *Purdue*, 603 U.S. at 216 n.2 (quotation marks omitted). But the Code does not confer any authority to impose a release of claims between non-debtors that would not be valid under state law. The Bankruptcy Code does not define a "consensual release." *See* 11 U.S.C. § 101. "There is no rule that specifies an 'opt out' mechanism or a 'deemed consent' mechanism" for third-party releases in chapter 11 plans. *In re Chassix Holdings, Inc.*, 533 B.R. 64, 78 (Bankr. S.D.N.Y. 2015). And no Code provision authorizes bankruptcy courts to deem a non-debtor to have consented to release claims against other non-debtors where such consent would not exist as

9

a matter of state law.

23.    Some courts have held that federal (rather than state) law applies to determine whether a third-party release is consensual.  But because there is no applicable Code provision, whether a non-debtor has consented to release another non-debtor is not, as one court concluded, a "matter of federal bankruptcy law."  *In re Spirit Airlines, Inc.*, 668 B.R. 689, 716 (Bankr. S.D.N.Y 2025); *see also In re Robertshaw US Holding Corp.*, 662 B.R. 300, 323 (Bankr. S.D. Tex. 2024) (relying on caselaw in the district rather than any provision of the Bankruptcy Code).  Absent express authority in the Code, federal courts cannot simply make up their own rules for when parties have given up property rights by releasing claims.  Bankruptcy courts cannot "create substantive rights that are otherwise unavailable under applicable law," nor do they possess a "roving commission to do equity."  *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (quotation omitted).  Indeed, nearly a hundred years ago, the Supreme Court rejected the notion that federal courts can displace state law as "an unconstitutional assumption of powers by the Courts of the United States which no lapse of time or respectable array of opinion should make us hesitate to correct."  *Erie*, 304 U.S. at 79 (internal quotations omitted); *accord Rodriquez v. FDIC*, 589 U.S. 132, 133 (2020) (holding state law applies to determine allocation of federal tax refund resulting from consolidated tax return).  Courts thus may not invent their own rule for when parties may be "deemed" to have given up property rights by releasing claims.

24.    Accordingly, state-law contract principles govern whether a third-party release is consensual.  *See, e.g.*, *Patterson v. Mahwah Bergen Ret. Grp., Inc.,* 636 B.R. 641, 684-85 (E.D. Va. 2022) (describing bankruptcy courts in the District of New Jersey as "look[ing] to the principles of contract law rather than the bankruptcy court's confirmation authority to conclude that the validity of the releases requires affirmative consent"); *In re Smallhold, Inc.*, 665 B.R. 704,

720 (Bankr. D. Del. 2024) (recognizing that "some sort of affirmative expression of consent that would be sufficient as a matter of contract law" is required); *In re SunEdison, Inc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("Courts generally apply contract principles in deciding whether a creditor consents to a third-party release."); *Arrowmill*, 211 B.R. at 506, 507 (explaining that a third-party release "is no different from any other settlement or contract" and thus "the validity of the release . . . hinge[s] upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order") (internal quotation marks omitted) (alterations in original). Because "'nothing in the bankruptcy code contemplates (much less authorizes it)' . . . any proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance and consent." *In re Tonawanda Coke Corp.*, 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024) (quoting *Purdue*, 603 U.S. at 223). And "any such consensual agreement would be governed by state law." *Id.*

25. Even if federal law applied, however, it would not lead to a different result. That is because "federal contract law is largely indistinguishable from general contract principles under state common law." *Young v. BP Expl. & Prod., Inc. (In re Deepwater Horizon)*, 786 F.3d 344, 354 (5th Cir 2015) (internal quotations omitted); *see Deville v. United States*, 202 F. App'x 761, 763 n.3 (5th Cir. 2006) ("The federal law that governs whether a contract exists 'uses the core principles of the common law of contracts that are in force in most states.' . . . These core principles can be derived from the Restatements.") (quoting *Smith v. United States*, 328 F.3d 760, 767 n.8 (5th Cir. 2003)).

C.    *Under State Law, Silence Is Not Acceptance.*

26. The Debtors bear the burden to prove that their plan is confirmable. *In re American Cap. Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012). They have not met this burden because they

have failed to establish that the third-party release is consensual under applicable state law. Under Delaware law, like in other states, an agreement to release claims—like any other contract—requires a manifestation of assent to that agreement.[7] *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 17(1) ("[T]he formation of a contract requires a bargain in which there is manifestation of mutual assent to the exchange and a consideration."); *In re Hertz Corp.*, 120 F.4th 1181, 1192 (3d Cir. 2024) ("Contract law does not bind parties to promises they did not make."); *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018) ("Under Delaware law, overt manifestation of assent . . . controls the formation of a contract.") (internal quotations omitted).

27. Thus, "[o]rdinarily[,] an offeror does not have power to cause the silence of the offeree to operate as acceptance."[8] RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981); *see Reichert v. Rapid Investments, Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) ("[T]he offeror cannot prescribe conditions so as to turn silence into acceptance."); *Jacques v. Solomon & Solomon P.C.*,

---

[7] Article I.D of the Plan provides that the laws of the State of New York apply in various situations. Nevertheless, a plan's choice of law is not controlling for relations between non-debtors, and the Court may apply Delaware law because no party has suggested that any other state's law applies. *See, e.g., Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits."). Nor has anyone suggested there would be a different outcome under the law of any other jurisdiction, so no choice of law is required. *See, e.g., In re Syntax-Brillian Corp.*, 573 F. App'x 154, 162 (3d Cir. 2014). Thus, the statement of one bankruptcy court that there is "no answer" to the choice of law question, *In re LaVie Care Cntrs., LLC*, No. 24-55507, 2024 WL 4988600, at *14 (Bankr. N.D. Ga. Dec. 5, 2024), is not true. Even if a choice of law had to be made, if such a choice is made difficult by the breadth of the third-party release that may be a reason not to approve the plan, but it is not an excuse to flout the court's obligation to make a choice of law if there is an actual conflict of laws. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985); *Cf. Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 669 (E.D. Va. 2022).

[8] Delaware, like many states, follows the Restatement (Second) of Contracts § 69. *See, e.g., Mack v. Mack*, No. 4240, 2015 WL 1607797, at *2 n.6 (Del. Ch. Mar. 31, 2015); *Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors, Inc.*, 768 A.2d 983, 991 (Del. Super. Ct. 2000); *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 52 (Tex. 2008); *The Levin Law Grp., P.C. v. Sigmon*, No. 14-08-01165-CV, 2010 WL 183525, at *3 (Tex. App. 2010); *Texas v. Triax Oil & Gas, Inc.*, 966 S.W. 2d 123, 128 (Tex. App. 1998).

886 F. Supp. 2d 429, 433 n.3 (D. Del. 2012) ("Merely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting."); *Elfar v. Wilmington Trust, N.A.*, No. 20-0273, 2020 WL 7074609, at *2 n.3 (E.D. Cal. Dec. 3, 2020) ("The court is aware of no jurisdiction whose contract law construes silence as acceptance of an offer, as the general rule."), *adopted by* 2020 WL 1700778, at *1 (E.D. Cal. Feb. 11, 2021); *accord* 1 Corbin on Contracts § 3.19 (2018); 4 Williston on Contracts § 6:67 (4th ed.).

28.     There are only very limited exceptions to the "general rule of contracts . . . that silence cannot manifest consent." *Patterson*, 636 B.R. at 686; *see, e.g.*, *McGurn v. Bell Microproducts, Inc.*, 284 F.3d 86, 90 (1st Cir. 2002) (recognizing "general rule" that "silence in response to an offer . . . does not constitute acceptance of the offer"). "[T]he exceptional cases where silence is acceptance fall into two main classes: those where the offeree silently takes offered benefits, and those where one party relies on the other party's manifestation of intention that silence may operate as acceptance. Even in those cases the contract may be unenforceable under the Statute of Frauds." RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a.

29.     But absent such extraordinary circumstances, "[t]he mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak." *Id.* And "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting." *Id.* § 69, cmt. c; *see Patterson*, 636 B.R. at 686 (explaining how contract law does not support deeming consent based upon a failure to opt out); *Jacques*, 886 F. Supp. 2d at 433 n.3.

**D.      *Merely Voting for a Plan Does Not Provide the Required Affirmative Consent.***

30.     Under the proposed Plan, the non-debtor releases would bind all parties who vote in favor of the Plan. Because the Plan would impose non-debtor releases on these parties based

on their silence, the releases are not consensual under state law and thus cannot be approved under *Purdue*.

31. Debtors mistakenly equate a vote for the Plan, which is governed by the Bankruptcy Code's provisions for adjusting relations between a debtor and its creditors, with acceptance of proposed third-party releases, which are contracts governed by state law dealing with relations between non-debtor parties. Those are distinct legal constructs involving distinct parties: the Plan disposes of a creditor's claims against the debtor, while a third-party release disposes of a non-debtor's right to sue other non-debtors. There is nothing in the Code that authorizes treating a vote to accept a chapter 11 plan as consent to a third-party release. "[A] creditor should not expect that [its] rights [against non-debtors] are even subject to being given away through the debtor's bankruptcy." *Smallhold,* 665 B.R. at 721.

32. Debtors' conflation of voting for the Plan with acceptance of the third-party release violates black-letter contract law, which requires a manifestation of intent to be bound by the third-party release. *See supra* Part B. Voting to accept a plan does not manifest that intent. A chapter 11 plan allocates how the bankruptcy estate will pay claims and interests against the debtor. *See* 11 U.S.C. § 1123. If the plan is confirmed, only claims and interests against the debtor are discharged. 11 U.S.C. § 524(e). And it is "[b]ecause discharge affects a creditor's rights, [that] the Code generally requires a debtor to vie for the creditor's vote first." *Keystone Gas Gathering, L.L.C. v. Ad Hoc Comm. (In re Ultra Petroleum Corp.)*, 943 F.3d 758, 763 (5th Cir. 2019). The right to vote on a plan depends solely on how the plan treats claims and interests against the debtor. *See* 11 U.S.C. §§ 1124, 1126, 502, 501, 101(10); *Ultra Petroleum Corp.*, 943 F.3d at 763; 7 Collier on Bankruptcy ¶ 1126.02 (16th 2025). Claims and interests that are not impaired by the plan are deemed accept it. *See* 11 U.S.C. §§ 1124, 1126; *Ultra Petroleum Corp.*, 943 F.3d at

763. Because the purpose of a chapter 11 plan is to determine how claims and interests *against the debtor* will be treated, voting to accept a chapter 11 plan does not manifest an intent to be bound by the third-party release. *See In re Congoleum Corp.*, 362 B.R. 167, 194 (Bankr. D.N.J. 2007); *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 507 (Bankr. D.N.J. 1997); *In re Digital Impact, Inc.*, 223 B.R. 1, 14 (Bankr. N.D. Okla. 1998).

33. Because "a creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings," "it is not enough for a creditor . . . to simply vote 'yes' as to a plan." *Arrowmill*, 211 B.R. at 507 (quotation marks omitted); *accord Congoleum Corp.*, 362 B.R. at 194 ("[A] consensual release cannot be based solely on a vote in favor of a plan."); *Digital Impact, Inc.*, 223 B.R. at 14. Rather, a creditor must "unambiguously manifest[] assent to the release of the nondebtor from liability on its debt." *Arrowmill*, 211 B.R. at 507. The "validity of th[at] release" necessarily "hinges upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order." *Id.* (citation and alterations omitted).

34. In addition to the lack of consent under state law, imposing a third-party release on everyone who votes to accept the plan may discourage creditors from voting. This would distort the voting process, which is intended to provide a valuable signal about the extent of creditor support, within each voting class, for the plan's treatment of creditors' allowed claims against the debtor. *Smallhold,* 665 B.R. 716.

35. Further, for those who believe the plan is the best way to maximize the return of their money from the debtor, requiring them to vote "no" on the Plan or to refrain from voting solely because of an objectionable non-debtor release—thus raising the possibility that the Plan may not be confirmed and they thus cannot receive the economic benefit under the Plan—would

15

be penalizing them for exercising their right to vote in favor of the Plan. If an offeree is penalized unless an "offer" is accepted, that circumstance "preclud[es] an inference of assent." *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1230-31 (9th Cir. 2022).

### E.   The Exculpation Clause is Impermissibly Broad Beyond Circuit Precedent

36.   To the extent exculpation is permissible beyond the provisions of 11 U.S.C. § 1125(e), this Circuit has only approved post-petition, pre-effective date exculpations that are limited to estate fiduciaries. The Plan's Exculpation Clause is inconsistent with controlling case law because it includes persons and entities that are not estate fiduciaries as well as entities that do not even exist until after the Effective Date. For these reasons, the Plan should not be confirmed if the provision is not modified.

37.   The Third Circuit in *In re PWS Holding Corporation*, 228 F.3d 224 (3d Cir. 2000) articulated the standard of liability to which estate fiduciaries are held in a chapter 11 case in a plan. *See id*. at 246. This Court has consistently interpreted *PWS Holding Corporation* and uniformly held that a party's entitlement to exculpation is based upon its role or status as an estate fiduciary. *See In re Washington Mut., Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) (holding that an "exculpation clause must be limited to the fiduciaries ***who have served during the chapter 11 proceeding***: estate professionals, the Committees and their members, and the Debtors' directors and officers.") (emphasis added); *accord In re Tribune Co.*, 464 B.R. 126, 189 (Bankr. D. Del. 2011); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013); *In re PTL Holdings LLC*, No. 11-12676 (BLS), 2011 WL 5509031, at *38 (Bankr. D. Del. Nov. 10, 2011) (Shannon, J.) ("courts have permitted exculpation clauses insofar as they merely state[] the standard to which ... estate fiduciaries [a]re held in a chapter 11 case. That fiduciary standard, however, applies only to estate fiduciaries, no one else.") (internal quotations omitted).

38. Because exculpation is limited to estate fiduciaries who served in the bankruptcy case, they must also be limited to actions and omissions taking place during the bankruptcy case. *See Washington Mut.*, 442 B.R. at 350 (exculpations cover "actions in the bankruptcy case") (citing *PWS*, 228 F.3d at 246).

39. In *In re Mallinckrodt PLC*, 639 B.R. 837 (Bank. D. Del. 2022), this Court recently held that exculpation "only extends to conduct that occurs between the Petition Date and the effective date," and ordered the debtors to strike contrary language from the exculpation provision. *Id.* at 883.

40. The Plan impermissibly provides for the inclusion of certain entities as "Exculpated Parties" who are not fiduciaries as required by established precedent articulated above. "Exculpated Parties" includes "with respect to the Debtors, each of their respective current and former directors, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date." Plan, Article I.A., at 84. This vague, all-encompassing description of participants in the chapter 11 process arguably includes non-fiduciaries – e.g., advisors, consultants, and other professionals.

41. Finally, the last sentence of the Exculpation Clause exceeds the scope of Bankruptcy Code section 1125(e):

> The Exculpated Parties have, and upon consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

Plan Art.VIII § E.

Section 1125(e) of the Bankruptcy Code states:

17

> A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

The definition of "Exculpated Parties" in the Plan contains a number of entities that neither "solicited" acceptance or rejection of a plan or participated "in the offer, issuance, sale or purchase of a security, offered or sold under the plan …." This Court cannot "deem" protection for entities in connection with the solicitation of votes on a plan or the offer, issuance, sale, or purchase of securities inconsistent with limitations expressly set by Congress under section 1125(e).

42. Consequently, unless the Plan is revised to (i) clarify that the Exculpation Clause is limited to the Debtors, their officers and directors, and estate professionals employed by order of this Court in accordance with Circuit precedent and (ii) address the other points identified above, the Plan should not be confirmed.

## **RESERVATION OF RIGHTS**

43. The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, inter alia, (i) complement, supplement, augment, alter and/or modify this Objection, (ii) file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required, and (iii) assert such other grounds as may become apparent upon further factual discovery. The U.S. Trustee also reserves all rights with respect to plan confirmation issues until the relevant objection deadline.

WHEREFORE, the U.S. Trustee requests that this Court enter an order (i) denying approval of the Solicitation Motion and (ii) granting such other relief that the Court deems just and proper.

Dated: August 6, 2025

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 & 9**

By: /s/ *Megan Seliber*
  Megan Seliber, Trial Attorney
  Jonathan Lipshie, Trial Attorney
  United States Department of Justice
  Office of the United States Trustee
  J. Caleb Boggs Federal Building
  844 King Street, Suite 2207, Lockbox 35
  Wilmington, Delaware 19801
  (202) 567-1480; (202) 567-1124
  megan.seliber@usdoj.gov; jon.lipshie@usdoj.gov