IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| AT HOME GROUP INC., *et al.*,[1] | ) ) | Case No. 25-11120 (JKS) |
| Debtors. | ) ) ) | (Jointly Administered) |
| | ) | Re: D.I. 316, 323, & 383 |

**DEBTORS' OMNIBUS OBJECTION TO MOTIONS FOR RELIEF FROM
AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby file this omnibus objection (this "Objection") to the *Motion of Catheryn Bowersox for Relief From the Automatic Stay to the Extent Necessary to Permit Continuation of a Personal Injury Claim Filed in the District Court of Harris County Texas Against At Home Stores, LLC* [D.I. 316] (the "Bowersox Motion") filed by Catheryn Bowersox (the "Bowersox Movant"), the *Motion of Janice L. White for Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(D)* [D.I. 323] (the "White Motion") filed by Janice L. White (the "White Movant"), and the *Motion*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: At Home Group Inc. (9563); Ambience Parent, Inc. (6231); Ambience Intermediate, Inc. (0692); At Home Holding II Inc. (9755); At Home Holding III Inc. (9930); At Home Companies LLC (6921); At Home Stores LLC (4961); At Home RMS Inc. (5235); At Home Gift Card LLC (0357); At Home Procurement Inc. (1777); At Home Properties LLC (2759); At Home Assembly Park Drive Condominium Association (N/A); 1600 East Plano Parkway, LLC (4757); 1944 South Greenfield Road LLC (4377); 2301 Earl Rudder Frwy S LLC (N/A); 3551 S 27th Street LLC (9350); 300 Tanger Outlet Blvd LLC (N/A); 3002 Firewheel Parkway LLC (2759); 2016 Grand Cypress Dr LLC (N/A); 8651 Airport Freeway LLC (0523); Transverse II Development LLC (8595); Rhombus Dev, LLC (4783); 1000 Turtle Creek Drive LLC (9177); 19000 Limestone Commercial Dr, LLC (3711); 4801 183A Toll Road, LLC (3909); 7050 Watts Rd LLC (N/A); 4700 Green Road LLC (9049); 361 Newnan Crossing Bypass LLC (N/A); 4304 West Loop 289 LLC (4302); 10460 SW Fellowship Way LLC (N/A); 1720 N Hardin Blvd LLC (N/A); Compass Creek Parkway LLC (N/A); 10800 Assembly Park Dr LLC (6145); Nodal Acquisitions, LLC (N/A); 15255 N Northsight Blvd LLC (N/A); 3015 W 86th St LLC (N/A); 9570 Fields Ertel Road LLC (N/A); 1376 E. 70th Street LLC (9942); 11501 Bluegrass Parkway LLC (3626); 12990 West Center Road LLC (9396); 334 Chicago Drive, LLC (2864); and 4200 Ambassador Caffery Pkwy LLC (5119). The location of the Debtors' service address for purposes of these chapter 11 cases is: 9000 Cypress Waters Blvd, Coppell, Texas 75019.

33438874.4

*for Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and Waiving Provisions of Fed. R. Bankr. P. 4001 (a)(3)* [D.I. 383] (the "Kittoe Motion," and together with the Bowersox Motion and the White Motion, the "Motions") filed by Dina Terranova Kittoe (the "Kittoe Movant," and together with the Bowersox Movant and the White Movant, the "Movants").[2] In support of this Objection, the Debtors rely upon and incorporate by reference the contemporaneously filed *Declaration of Jeremy Aguilar in Support of Debtors' Omnibus Objection to Motions for Relief From Automatic Stay Under Section 362 of the Bankruptcy Code* (the "Aguilar Decl."). In further support of this Objection, the Debtors respectfully represent and set forth as follows:

## PRELIMINARY STATEMENT

1. The Movants—unsecured creditors holding contingent, unliquidated litigation claims against the Debtors—seek to lift the automatic stay to prosecute prepetition personal injury-related lawsuits against the Debtors and certain non-Debtor defendants in non-bankruptcy courts. The United States Bankruptcy Court for the District of Delaware (the "Court") should deny the Motions so that the Debtors (and their creditors) can benefit from the "breathing spell" created by the automatic stay, to prevent the Movants from jumping the line of creditors, and to protect the Debtors from being forced to expend estate assets defending cases in other forums.

2. The Movants offer no "cause" to lift the stay, and each of the standard factors for determining cause to lift a stay weighs against doing so here. Instead, two Movants assert in conclusory fashion that they should be allowed to proceed against the Debtors' insurers, which the

---

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Jeremy Aguilar, Chief Financial Officer of At Home Group Inc. and Certain of Its Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 4] (the "First Day Declaration"), incorporated by reference herein. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

33438874.4

2

Movants incorrectly claim will not prejudice the Debtors' estates (Bowersox Mot. ¶ 7; Kittoe Mot. at 3), while the third Movant makes no attempt at all to argue Debtors' estates will not be prejudiced if the stay is lifted, instead merely stating that her claim has a two-year statute of limitations (White Mot. ¶ 17).

3. Movants' allegations that proceeding against the Debtors' insurer will not harm the Debtors are misleading and inaccurate. As an initial matter, the general liability insurance policy (the "<u>Insurance Policy</u>") against which the Movants seek to proceed contains a $250,000 per-occurrence self-insured retention ("<u>SIR</u>"). *See* the Aguilar Decl. ¶ 9. Before the Movants can recover under the Insurance Policy, the SIR will need to be exhausted, which would result in costs and expenses to the Debtors' estates. *Id.* ¶¶ 10, 12, 14. Thus, even if the Movants were entitled to insurance proceeds—which their Motions do not establish and which need not be resolved here—the Movants cannot access those insurance proceeds without first impairing the property of the Debtors' estates via the SIR, an outcome at odds with the automatic stay's protection of estate assets.

4. The SIR aside, granting the relief requested will distract the Debtors' in-house team from their restructuring-focused obligations and require the Debtors to expend estate assets defending against the Movants' cases, depriving the Debtors of the pause in the non-bankruptcy court adjudication of prepetition claims afforded by the automatic stay.

5. Congress was clear that debtors receive a "breathing spell" from prepetition litigation while they navigate the bankruptcy process. The automatic stay affords debtors time to develop, confirm, and consummate a plan of reorganization, while protecting other creditors from a race by their peers to procure judgments outside the bankruptcy court. Thus, all unsecured creditors, including the Movants, must establish "extraordinary circumstances" to lift the stay and

skip the line of other litigants participating in the restructuring process. *See, e.g., In re Brown*, 311 B.R. 409, 413 (E.D. Pa. 2004) ("Unsecured creditors are generally entitled to relief from an automatic stay only in extraordinary circumstances."); *In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017) ("[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief[.]") (quoting *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)).

6. The Movants do not meet their heavy burden of proof to justify lifting the automatic stay and prioritizing their claims ahead of other prepetition litigation claimants. Furthermore, the Movants have not identified any cognizable harm that would be suffered if the stay is not lifted. Nor can they. The Movants can preserve their claims against the Debtors by filing proofs of claim. Just like every other prepetition litigation claimant, the Movants should follow and participate in the claims administration process.[3] The Movants will not be prejudiced by resolving their claims through these chapter 11 cases—just like every other creditor—and there is nothing extraordinary about Movants' claims that warrants lifting the stay.

7. Finally, if the Motions were granted, only the Movants stand to benefit, while the automatic stay would continue to prohibit other constituents from pursuing their claims outside the Court. An order granting the relief sought by the Motions would invite a parade of other litigation claimants to seek similar relief.[4] Courts recognize the risk of opening the proverbial "floodgates" to similarly situated creditors. *See, e.g., In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) ("[G]ranting relief [from the automatic stay]

---

[3] The claim administrator's website includes instructions for filing a proof of claim either by mail or online, at https://cases.omniagentsolutions.com/claim?clientid=3743.

[4] The Debtors' schedules show the volume of litigation claims pending against the Debtors. *See* D.I. 431-472.

33438874.4

4

could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case[.]"). The Debtors and their advisors are working tirelessly to develop consensus ahead of a confirmation hearing that the Debtors have proposed for just a couple months away. Permitting the Movants to commence or continue litigating their claims against the Debtors outside of these bankruptcy proceedings would undermine those efforts.

8.    For these reasons, and as further set forth herein, the Motions should be denied.

## BACKGROUND

### I.    THE MOTIONS

9.    **Bowersox Motion**. The Bowersox Movant seeks relief from the automatic stay to litigate a personal injury action against Debtor At Home Stores, LLC in a civil action (the "Bowersox Litigation"), pending in the District Court of Harris County, Texas. The Bowersox Movant asserts that she is seeking relief from the automatic stay to allow her to proceed with the Bowersox Litigation against At Home Group, LLC "only to the extent that an award of judgment…would be limited to the Debtor's insurance carrier policy limits at the time of the incident." Bowersox Mot. ¶ 8.

10.    **White Motion.** The White Movant seeks relief from the automatic stay to commence litigation against Debtor At Home Stores, LLC in a prospective civil action, (the "White Litigation") in Howard County, Indiana. The White Movant asserts that she is seeking relief from the automatic stay to avoid unnecessary delay in the White Litigation. White Mot. ¶ 17.

11.    **Kittoe Motion.** The Kittoe Movant seeks relief from the automatic stay to permit her to litigate a personal injury action against Debtor At Home Group, Inc. in a civil action, (the "Kittoe Litigation" and, together with the White Litigation and the Bowersox Litigation the "State Litigations"). The Kittoe Movant asserts that she is seeking relief from the automatic stay

to avoid unnecessary delay in the Kittoe Litigation.[5]  Additionally, the Kittoe Movant asserts that she will "limit any recovery to the extent of insurance coverage."  Kittoe Mot. at 3.

## II. THE DEBTORS' INSURANCE COVERAGE

12. The Debtors' Insurance Policy with Liberty Mutual Insurance has a coverage period of December 1, 2022, to December 1, 2023.  It therefore appears to apply to the Movants' claims and includes a per-occurrence SIR of $250,000.  *See* Aguilar Decl. ¶¶ 8, 11, 13.  Accordingly, the Debtors must expend $250,000 per claim before insurance coverage is triggered.  *Id*. ¶¶ 10, 12, 14.  The Debtors have not exhausted those SIRs for any of the claims at issue.  *Id.* ¶¶ 9, 11, 13.

## **ARGUMENT**

## III. THE AUTOMATIC STAY IS A FUNDAMENTAL PROTECTION THAT PREVENTS PIECEMEAL LITIGATION OF CLAIMS IN OTHER COURTS.

13. The automatic stay of section 362 of the Bankruptcy Code is "one of the most fundamental protections granted the debtor under the Bankruptcy Code." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986)).  The purpose of the automatic stay is threefold: "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982)), *quoted in Rexene Prods.*, 141 B.R. at 576.

---

[5] Additional factual allegations regarding the Kittoe Litigation are contained in the *Certification of Barry Cooke, Esq. in Support of Motion for Entry of an Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and Waiving the Provisions of Fed. R. Bankr. P. 4001(a)(3)* [D.I. 385] (the "Kittoe Certification").

33438874.4

14. The automatic stay is designed to give a debtor a "breathing spell" free from the worry and expense associated with defending state court litigation while the debtor attempts to reorganize its affairs. *See Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); H.R. Rep. No. 595, 95th Cong. 1st Sess. 340 (1977).

15. Section 362(d)(1) of the Bankruptcy Code permits a court to grant relief from the automatic stay "for cause." 11 U.S.C. § 362. Whether cause exists to lift the stay is determined on a case-by-case basis. *See In re Integrated Health Servs., Inc.*, 2000 WL 33712483, *1 (Bankr. D. Del. Aug. 11, 2000); *In re Lincoln*, 264 B.R 370, 373 (Bankr. E.D. Pa. 2001) ("Each request for relief for 'cause' under [section] 362(d)(1) must be considered on its own facts."). In determining whether "cause" exists, courts in this district consider the following three "*Rexene* Factors":

    (1)    the prejudice that would be suffered by the debtors should the stay be lifted;
    (2)    the balance of the hardships facing the parties if the stay is lifted; and
    (3)    the probable success on the merits if the stay is lifted.

*In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 718 (Bankr. D. Del. 1996) (citing *Rexene Prods.*, 141 B.R. at 576). "To establish cause, the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips *significantly* in [its] favor.'" *In re Am. Classic Voyages, Co.*, 298 B.R. 222, 225 (D. Del. 2003) (alteration in original) (quoting *In re FRG*, 115 B.R. 72, 74 (E.D. Pa. 1990)); s*ee also In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009) (listing as the second prong "whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor" (internal citations omitted)).

**IV.     THERE IS NO "CAUSE" TO MODIFY THE STAY.**

16.     A review of the *Rexene* Factors demonstrates that lifting the automatic stay is not warranted for any of the Movants.  Lifting the automatic stay would significantly prejudice the Debtors' estates, and in each Movant's case, the balance of hardships favors the Debtors.

**A.     Lifting the Automatic Stay Would Prejudice the Debtors.**

17.     If the automatic stay were lifted and the State Litigations were to proceed, the Debtors would be prejudiced by having to defend the State Litigations or else suffer adverse judgments, in either case depleting the Debtors' limited resources and undermining one of the key objectives of the stay.  *See Rexene*, 141 B.R. at 576; *Borman*, 946 F.2d at 1036 ("The automatic stay was designed . . . to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it . . . .").  Insurer coverage under the Insurance Policy does not arise until after the Debtors expend $250,000, including on defense costs.  As a result, the lifting of the automatic stay to allow the State Litigations to proceed could directly affect the Debtors' assets and prejudice the Debtors and their other creditors.

18.     Bankruptcy courts routinely deny motions to lift the automatic stay when claimants seek to recover damages from a debtor's insurance policies where the debtors have not exhausted the applicable SIR or deductible.  *See, e.g., Pak-Mor Mfg. Co. v. Royal Surplus Lines Ins. Co.*, 2005 WL 3487723, at *2 (W.D. Tex. Nov. 3, 2005) ("[U]nder the policy [the insurer] need not pay anything under its policy unless [debtor] first satisfies the self-insured retention."); *In re EnCap Golf Holdings*, LLC, 2008 WL 3193786, at *4 (Bankr. D.N.J. Aug. 4, 2008) ("Because the Self-Insured Retention has not been exhausted, [insurer] has no obligation to make payments under [its] Policy . . . there is no cause to grant relief from the automatic stay[.]"); *In re Apache Prods. Co.*, 311 B.R. 288, 297 (Bankr. M.D. Fla. 2004) (holding that the debtor "must exhaust the SIR amount before [insurer's] obligation to defend arises."); *In re Residential Capital LLC*, 2012 WL 3249641,

33438874.4

at *5 (Bankr. S.D.N.Y. Aug. 7, 2012) (denying a motion to lift the automatic stay where allowing the action to proceed would require debtors to pay damages directly from its policy deductible); *In re Rite Aid Corporation*, Order Denying Motions for Relief from Automatic Stay [D.I. 698, Case No. 23-18993 (Bankr. D.N.J. Nov. 20, 2023) (denying four lift-stay motions, in part due to unexhausted SIRs, as explained in bench ruling).  The Debtors have not exhausted the SIRs or deductibles applicable to the Movants' claims.

19. Further, the Movants seek to recover from the Debtors' insurance policies, which are property of the bankruptcy estates.  Indeed, the Third Circuit has observed that "[i]t has long been the rule in this Circuit that insurance policies are considered part of the property of a bankruptcy estate." *Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006) (citing *Estate of Lellock v. The Prudential Ins. Co. of Am.*, 811 F.2d 186, 189 (3d Cir. 1987)).

20. Additionally, allowing the Movants to recover on their claims ahead of other creditors is contrary to the priority scheme set forth in the Bankruptcy Code and the principle of bankruptcy law that all of the Debtors' interests in property are to be distributed equitably.  Such a result would encourage other creditors to seek similar relief (and to do so as quickly as possible) and would undermine the Debtors' chapter 11 efforts and hamper their ability to conduct a focused and structured claims reconciliation process.  *See In re SN Liquidation, Inc.,* 388 B.R. 579, 584 (Bankr. D. Del. 2008); *DBSI,* 407 B.R. at 167 (denying stay relief where it may encourage "a race to the courthouse by parties seeking similar orders, which will cause undue hardship and expense to the estate"); *Bally Total Fitness*, 402 B.R. at 623 (denying a motion for relief from the automatic stay where "granting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case"); *In re Philadelphia Newspapers, LLC*, 423 B.R.

98, 106 (E.D. Pa. 2010) (affirming bankruptcy court's stay of state-court actions, in part because lifting the stay "could open the floodgates to allow all other litigants to pursue the same course.").

21. Moreover, the burden associated with litigating these actions is not strictly financial. Allowing the Movants' litigations to proceed (or begin, in the case of the White Movant) would force the Debtors to divert time, resources, and attention that would otherwise be dedicated to administering their estates. There are already significant, and conflicting, demands on management's time. *See* Aguilar Decl. ¶ 6. The automatic stay is meant to allow the Debtors to concentrate on these critical chapter 11 tasks without the distraction of ancillary litigation. *See In re W.R. Grace & Co.*, 2007 WL 1129170, at *2 n.7 (Bankr. D. Del. Apr. 13, 2007). The "general idea is that 'cause' exists where the other proceeding bears no relation to the bankruptcy case or no relation to the purpose of the automatic stay." *In re Adams*, 27 B.R. 582, 585 (D. Del. 1983). Here, the Motions seek to allow new or continued prosecution of claims that would interfere with and disrupt the bankruptcy cases by (i) draining property of the estates due to applicable SIRS/deductibles, (ii) undermining the claims adjudication process by allowing the Movants to jump ahead of similarly situated creditors in obtaining recoveries, (iii) distracting the Debtors' in-house teams from their primary task of facilitating a successful restructuring, and (iv) depleting insurance policies that are property of the Debtors' bankruptcy estates. Accordingly, lifting the stay would prejudice the Debtors to the detriment of these chapter 11 cases.

**B.     The Balance of Harms Weighs Against Granting the Motions.**

22. The most important factor to consider when addressing whether cause exists to lift the automatic stay is the effect on the administration of the chapter 11 cases. *See In re W.R. Grace*, 2007 WL 1129170 at *2 n.7 ("Even slight interference [to the administration of the case] . . . may be enough to preclude relief in the absence of a commensurate benefit."); *see also DBSI*, 407 B.R. at 167 ("Courts also place emphasis on whether lifting the automatic stay will impede[] the orderly

administration of the debtor's estate."); *In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980) ("Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited."). As a result, cause exists only if the harm that the Movants would suffer from maintaining the stay "considerably outweighs" the harm that the Debtors would suffer from lifting of stay. *See, e.g.*, *DBSI*, 407 B.R. at 166.

23. Here, any harm to the Movants is limited by the fact that (i) their cases are far from their conclusion, indeed the White Litigation has not yet been filed,[6] and (ii) these chapter 11 cases are proceeding without any significant delay.[7] Regardless, any conceivable harm to the Movants cannot outweigh the harm to the Debtors from lifting the automatic stay. As described above, the harm that the Debtors would suffer if the stay were lifted would be substantial. Conversely, the Movants have not identified any harm sufficient to merit lifting the automatic stay. The only harm they identify is the bare fact that their respective State Litigations are stayed. While the automatic stay may delay the prosecution of the State Litigations by a few months (the Debtors have requested a September 2025 confirmation hearing), such delay does not establish the harm necessary for relief from stay. If it did, every creditor would be entitled to relief from the automatic stay. *Cf. In re Condisco*, 271 B.R. 273, 277 (Bankr. N.D. Ill. 2002) ("The automatic stay almost always delays litigants. That is, after all, its purpose and the reason they call it a 'stay.'").

---

[6] *See* White Mot. ¶ 12 (lawsuit not yet filed); Bowersox Mot. ¶¶ 4-6 (amended complaint filed May 30, 2025; mandatory mediation, expert discovery, and trial all forthcoming); Kittoe Cert. ¶ 6-7 (complaint filed May 13, 2025).

[7] *See, e.g.*, *Motion of Debtors for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan, (III) the Form of Ballot and Notices in Connection Therewith, (IV) Certain Dates and Deadlines with Respect Thereto, and (V) Granting Related Relief* [D.I. 376] (requesting a confirmation hearing for September 29, 2025); *Motion of Debtors Seeking Entry of an Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(B)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [D.I. 355] (requesting bar date).

33438874.4

24. Further, the potential delay in resolving the Movants' claims does not outweigh the Debtors' interest in preserving estate assets. The Debtors would suffer significant prejudice if the Court were to allow the State Litigations to proceed at this critical juncture of the chapter 11 cases. The Debtors are currently operating their business, negotiating with stakeholders, and responding to the demands of these chapter 11 cases, while working toward a comprehensive reorganization. Aguilar Decl. ¶ 6. Because of the SIR, the burden of defending the State Litigations, if they were allowed to proceed, may fall on the Debtors, who can ill afford that distraction at this stage of the chapter 11 cases. The Debtors must maintain their focus on administering the estate and reorganizing.

25. Finally, the Movants are not in a unique position among unsecured creditors and allowing them to potentially recover on their claims ahead of others would be contrary to the priority scheme set forth in the Bankruptcy Code and cause harm to similarly situated creditors. "The general principle is that 'unsecured claims should not be granted relief from the stay because to do so would result in a violation of one of the fundamental concepts of bankruptcy law; that there should be an equality of distribution among creditors.'" *In re R.F. Cunningham & Co., Inc.*, 355 B.R. 408, 413 (Bankr. E.D.N.Y. 2006) (quoting *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)). "An unsecured claimant should not be entitled to obtain a distributive advantage over other unsecured claimants who are similarly enjoined from seeking distribution by any method other than in accordance with the distributive scheme under the Bankruptcy Code." *Leibowitz*, 147 B.R. at 345. For this reason alone, the Motions should be denied. *See, e.g.*, *In re Rite Aid Corporation*, Order Denying Motion for Relief from Stay [D.I. 2942], Case No. 23-18993 (Bankr. D.N.J. Apr. 19, 2024) (denying lift-stay motion because the automatic stay "serves to

protect the bankruptcy estate from piecemeal claims and encourages the equal treatment of claims," and "protect[s] all unsecured creditors from unfair treatment").

### C. Movants' Threadbare Assertions of Probable Success on the Merits Do Not Warrant Modifying the Automatic Stay.

26. Movants have also not proven their probable success on the merits—a part of a balancing test and not a sufficient condition for modifying the automatic stay. *See Rexene*, 141 B.R. at 577. While the Movants make bare bones assertions that they will succeed in their State Litigations, none of those cases are developed enough to make a determination on this factor. Indeed, the White Litigation has not even been filed, and no discovery or motions practice have taken place as to the other State Litigations. At best, this factor is neutral, and does not warrant the extraordinary relief of denying the Debtors' the statutory breathing spell afforded by the automatic stay and allowing the Movants to jump the line of other creditors to deplete the Debtors' estates.

### CONCLUSION

27. For the foregoing reasons, the Debtors respectfully request that the Court deny the Motions for lack of cause. Doing so will help facilitate the fair and equitable resolution of prepetition litigation claims by centralizing that resolution process in this Court and give effect to the "breathing spell" provided to the Debtors through the Bankruptcy Code's automatic stay.

[*Remainder of page intentionally left blank*]

Dated: August 7, 2025
Wilmington, Delaware

/s/ Timothy R. Powell

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br>Robert S. Brady (DE Bar No. 2847)<br>Joseph M. Mulvihill (DE Bar No. 6061)<br>Timothy R. Powell (DE Bar No. 6894)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone:   (302) 571-6600<br>Facsimile:    (302) 571-1253<br>Email:          rbrady@ycst.com<br>                    jmulvihill@ycst.com<br>                    tpowell@ycst.com<br><br>*Co-Counsel for the Debtors and Debtors in Possession* | KIRKLAND & ELLIS LLP<br>KIRKLAND & ELLIS INTERNATIONAL LLP<br>Nicole L. Greenblatt, P.C. (admitted pro hac vice)<br>Matthew C. Fagen, P.C. (admitted pro hac vice)<br>Elizabeth H. Jones (admitted pro hac vice)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:          nicole.greenblatt@kirkland.com<br>                    matthew.fagen@kirkland.com<br>                    elizabeth.jones@kirkland.com<br><br>*Co-Counsel for the Debtors and Debtors in Possession* |