IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AT HOME GROUP, *et al.*,[1] | Case No. 25-11120 (JKS) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF JILL FRIZZLEY IN SUPPORT OF CONFIRMATION OF THE AMENDED JOINT PLAN OF REORGANIZATION OF AT HOME GROUP INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

I, Jill Frizzley, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. Since March 28, 2025, I have served as an independent director on the board of directors (collectively, the "Board") of the above-captioned debtors (the "Debtors," and together with their non-Debtor direct and indirect subsidiaries, the "Company" or "At Home"). In addition, Elizabeth Abrams and John Butcher (collectively with myself, the "Independent Directors," and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: At Home Group Inc. (9563); Ambience Parent, Inc. (6231); Ambience Intermediate, Inc. (0692); At Home Holding II Inc. (9755); At Home Holding III Inc. (9930); At Home Companies LLC (6921); At Home Stores LLC (4961); At Home RMS Inc. (5235); At Home Gift Card LLC (0357); At Home Procurement Inc. (1777); At Home Properties LLC (2759); At Home Assembly Park Drive Condominium Association (N/A); 1600 East Plano Parkway, LLC (4757); 1944 South Greenfield Road LLC (4377); 2301 Earl Rudder Frwy S LLC (N/A); 3551 S 27th Street LLC (9350); 300 Tanger Outlet Blvd LLC (N/A); 3002 Firewheel Parkway LLC (2759); 2016 Grand Cypress Dr LLC (N/A); 8651 Airport Freeway LLC (0523); Transverse II Development LLC (8595); Rhombus Dev, LLC (4783); 1000 Turtle Creek Drive LLC (9177); 19000 Limestone Commercial Dr, LLC (3711); 4801 183A Toll Road, LLC (3909); 7050 Watts Rd LLC (N/A); 4700 Green Road LLC (9049); 361 Newnan Crossing Bypass LLC (N/A); 4304 West Loop 289 LLC (4302); 10460 SW Fellowship Way LLC (N/A); 1720 N Hardin Blvd LLC (N/A); Compass Creek Parkway LLC (N/A); 10800 Assembly Park Dr LLC (6145); Nodal Acquisitions, LLC (N/A); 15255 N Northsight Blvd LLC (N/A); 3015 W 86th St LLC (N/A); 9570 Fields Ertel Road LLC (N/A); 1376 E. 70th Street LLC (9942); 11501 Bluegrass Parkway LLC (3626); 12990 West Center Road LLC (9396); 334 Chicago Drive, LLC (2864); and 4200 Ambassador Caffery Pkwy LLC (5119). The location of the Debtors' service address for purposes of these chapter 11 cases is: 9000 Cypress Waters Blvd, Coppell, Texas 75019.

each, an "Independent Director") also serve as independent directors of the Board. As a member of the Board, I have had oversight of the Debtors' activities prior to, and throughout these chapter 11 cases (the "Chapter 11 Cases"). Ms. Abrams and I conducted a thorough independent investigation (the "Investigation") with the assistance of Young Conaway Stargatt & Taylor, LLP ("Young Conaway") into potential estate causes of action as members of a special committee created by the Board. Mr. Butcher, who served on the Board from 2020 to 2021, and then rejoined the Board in June 2023, recused himself from the Investigation in light of his tenure as a Board member with At Home during the time period on which the Investigation focused, though he remained as a member of the special committee for all other purposes.

2. As a result of my experience with the Debtors, my review of public and non-public documents (including the Debtors' books and records), and my discussions with the Debtors' management team and advisors, I am generally familiar with the Debtors' business, financial condition, policies and procedures, day-to-day operations, and books and records.

3. I submit this declaration (this "Declaration") in support of confirmation of the *Joint Plan of Reorganization of At Home Group Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* filed July 7, 2025 [Docket No. 541] (as may be amended, supplemented, or modified from time to time, the "Plan").[2] Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with members of the Debtors' management team, the Debtors' legal counsel and other advisors, and my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives. I do not, and do not intend to, waive the attorney-client privilege or any other applicable privilege or protections by submitting this Declaration.

---

[2] Capitalized terms used but not otherwise defined in this Declaration shall have the meanings used in the Plan.

33578979.4

2

I.  **PROFESSIONAL QUALIFICATIONS**

4. I began my professional career in 2000, working for the first 16 years at the Shearman and Sterling law firm in New York, first as an associate, and then as counsel, principally in that firm's Financial Restructuring & Insolvency group. From 2016 to 2019, I was Counsel in the Business Finance and Restructuring section of the New York-based law firm, Weil Gotshal & Manges. For the past six years I have worked as the President of Wildrose Partners LLC, a consulting firm which provides restructuring services, most notably as independent directors of distressed companies. During that time, I have served as an independent director for dozens of companies including Avaya, Buitoni, CalAmp Corp., Rue21, Surgalign Holdings, KLDiscovery, Invitae, Proterra, Virgin Orbit, Vivus, and First Mode, among others. I hold a B.S. degree from the University of Alberta, and a law degree from the University of Toronto.

II.  **APPOINTMENT TO THE BOARD AND RESTRUCTURING COMMITTEE**

5. On March 28, 2025, the Debtors appointed Ms. Abrams and I to the Board to replace certain directors that were formerly nominated by the Debtors' parent and affiliates from the private equity firm of Hellman an & Friedman.

6. It is my understanding that the Debtors appointed me as an Independent Director based on (a) my expertise in the distressed market and professional experience with companies contemplating or undergoing significant restructuring transactions, both in and out of court, and (b) the Board determining that I was independent.

7. On March 28, 2025, the Board formed a special committee comprised of the Independent Directors (the "Special Committee"), which was charged with evaluating the Company's business and strategic options in light of market conditions and its financing arrangements. Accordingly, I have stayed informed as the Special Committee evaluated various potential restructuring alternatives.

8. At the beginning of April 2025, it became evident through the Debtors' marketing process and evaluation of financing options that an out-of-court sale transaction might not be achievable and that a bankruptcy filing might be necessary to maximize the Company's value. As a result, the Company initiated the independent Investigation to determine whether, in the context of a bankruptcy, the Debtors might have potential claims against various parties and constituencies, including those affiliated with the Company.

### III. INDEPENDENT INVESTIGATION

9. In my capacity as an Independent Director and a member of the Special Committee, I authorized the Investigation into potential claims that the Company might hold against third parties, including, but not limited to, its current and former directors, officers, employees, lenders, stockholders and/or advisors (collectively, the "Investigation Parties"), in order to evaluate, among other things, the existence, validity, and value of any such potential claims and make a recommendation to the full Board in connection therewith. Among other things, the Investigation included an assessment of a liability management transaction that had been adopted by the Company in 2023 in an effort to address its liquidity issues.

10. The Special Committee was advised and assisted in the Investigation by Young Conaway. The Special Committee chose Young Conaway to provide legal assistance in the Investigation based on prior positive experiences working with Young Conaway, the fact that Young Conaway had no prior relationship with the Company, and the firm's familiarity with these Chapter 11 Cases as co-Counsel for the Debtors and Debtors-in-Possession. In the main, Young Conaway's role in the Investigation consisted of securing material company documents, reviewing and analyzing them, interviewing key personnel, and meeting with the Special Committee on a weekly basis to keep it apprised of the investigation, and to take direction from the Special Committee on specific issues, transactions or areas of concern. At the Special Committee's

direction, Young Conaway reviewed thousands of pages of relevant documents for the period of January 1, 2021, through the present and conducted extensive interviews of eight (8) individuals, including members of the Company's Board and upper management, certain former directors and/or officers, and representatives of Hellman & Friedman. As applicable, interviewees were questioned on compensation arrangements, relationships and potential conflicts, At Home's operations and financing history, At Home's Board and management, At Home's liquidity needs, potential claims At Home might have against insiders and third parties, and numerous other topics.

11. The Investigation also considered, researched and reviewed broad categories of potential claims, including breach of fiduciary duty, breach of contract, fraudulent transfer, preference claims, recharacterization, equitable subordination, fraud and tortious interference. The Investigation did not uncover facts that would suggest At Home had viable claims against any insider or lender for any types of claims.

12. As noted above, Young Conaway met with and reported to the Special Committee throughout the process (typically on a weekly basis), reviewed thousands of pages of documents, conducted interviews and researched the potential for any viable claims held by the Debtors and their estates against any of the Released Parties as defined in the Plan. Young Conaway also offered to meet with counsel to the Unsecured Creditors Committee (the "UCC") in furtherance to the production of documents that had been made to the UCC by the Company on or about July 25, 2025. (The UCC had issued subpoenas to both the Company and the Special Committee on or about July 23, 2025, requesting roughly 15 categories of documents. Because the production requests were substantially the same, the document production made by the Company on July 25, 2025, essentially provided all the responsive documents also being requested of the Special

Committee.) Although a meeting with the UCC was agreed upon and scheduled, it ultimately became unnecessary when a settlement with the UCC was reached.

13. In light of the foregoing, the Special Committee concluded that that the Debtors and their estates do not have viable or valuable causes of action against the Investigation Parties that are Released Parties that are worthy of pursuit. Accordingly, I believe that the Debtor Release as defined in the Plan with respect to those parties is reasonable and appropriate.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: September 24, 2025

*/s/ Jill Frizzley*
Jill Frizzley
Independent Director