**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| AT HOME GROUP INC., *et al.*,[1] | Case No. 25-11120 (JKS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JEFFREY KOPA**
**IN SUPPORT OF CONFIRMATION OF THE AMENDED**
**JOINT PLAN OF REORGANIZATION OF AT HOME GROUP INC. AND ITS**
**DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

I, Jeffrey Kopa, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1.     I am a Partner and Managing Director at AlixPartners, LLP ("AlixPartners"), which has a place of business at 909 Third Avenue, Floor 30, New York, New York 10022. AlixPartners, LLP has been engaged as the financial advisor for the debtors and debtors-in-possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors") since February 2025.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  At Home Group Inc. (9563); Ambience Parent, Inc. (6231); Ambience Intermediate, Inc. (0692); At Home Holding II Inc. (9755); At Home Holding III Inc. (9930); At Home Companies LLC (6921); At Home Stores LLC (4961); At Home RMS Inc. (5235); At Home Gift Card LLC (0357); At Home Procurement Inc. (1777); At Home Properties LLC (2759); At Home Assembly Park Drive Condominium Association (N/A); 1600 East Plano Parkway, LLC (4757); 1944 South Greenfield Road LLC (4377); 2301 Earl Rudder Frwy S LLC (N/A); 3551 S 27th Street LLC (9350); 300 Tanger Outlet Blvd LLC (N/A); 3002 Firewheel Parkway LLC (2759); 2016 Grand Cypress Dr LLC (N/A); 8651 Airport Freeway LLC (0523); Transverse II Development (8595); Rhombus Dev, LLC (4783); 1000 Turtle Creek Drive LLC (9177); 19000 Limestone Commercial Dr, LLC (3711); 4801 183A Toll Road, LLC (3909); 7050 Watts Rd LLC (N/A); 4700 Green Road LLC (9049); 361 Newnan Crossing Bypass LLC (N/A); 4304 West Loop 289 LLC (4302); 10460 SW Fellowship Way LLC (N/A); 1720 N Hardin Blvd LLC (N/A); Compass Creek Parkway LLC (N/A); 10800 Assembly Park Dr LLC (6145); Nodal Acquisitions, LLC (N/A); 15255 N Northsight Blvd LLC (N/A); 3015 W 86th St LLC (N/A); 9570 Fields Ertel Road LLC (N/A); 1376 E. 70th Street LLC (9942); 11501 Bluegrass Parkway LLC (3626); 12990 West Center Road LLC (9396); 334 Chicago Drive, LLC (2864); and 4200 Ambassador Caffery Pkwy LLC (5119). The location of the Debtors' service address for purposes of these chapter 11 cases is:  9000 Cypress Waters Blvd, Coppell, Texas 75019.

2.      For the past seven months, my team and I have worked closely with the Debtors on their current restructuring process.  As such, I am familiar with the Debtors' operations, business affairs, financial performance, and restructuring efforts.

3.      I submit this declaration (this "Declaration") in support of confirmation of the *Amended Joint Plan of Reorganization of At Home Group Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"), filed contemporaneously herewith.[2]  In connection with its retention in this matter, AlixPartners prepared financial projections (the "Financial Projections"), a summary of which is attached as Exhibit B to the Disclosure Statement and appended hereto as **Exhibit A**,[3] and a liquidation analysis (the "Liquidation Analysis"), a summary of which is attached as Exhibit D to the Disclosure Statement and appended hereto as **Exhibit B**.

4.      Except as otherwise indicated herein, all statements set forth in this Declaration are based on my experience, my personal knowledge of the Debtors' operations, finances, and restructuring initiatives, information I have learned from my review of relevant documents, information supplied to me by employees and members of the Debtors' management and/or their other advisors, or information that I have received from employees of AlixPartners working directly with me or under my supervision or direction.  I am not being compensated specifically for this testimony other than through payments received by AlixPartners as a professional that has been retained by the Debtors in these Chapter 11 Cases.  I am authorized to submit this declaration

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Disclosure Statement Relating to the Joint Plan of Reorganization of At Home Group Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 542] (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"), and the Plan.

[3]   On September 24, 2025, the Debtors filed revised Financial Projections.  *See Notice of Filing Revised Financial Projections as an Exhibit to the Disclosure Statement* [Docket No. 679].  The revised Financial Projections are the version appended hereto as **Exhibit A**.

on behalf of the Debtors.  I am over the age of eighteen and if called to testify as a witness, I would testify competently to the statements set forth herein.

### Background and Qualifications

5.      AlixPartners is a global independent restructuring consulting firm that has a wealth of experience in providing restructuring advisory services, and has assisted and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to these chapter 11 cases.   Specifically, AlixPartners' core turnaround and restructuring services include interim management, and executive-level officer roles; liability management; liquidity management; lender and creditor advisory; and bankruptcy, insolvency, and case management.   Since its inception in 1981, AlixPartners, its predecessor entities, and its affiliate, AP Services, LLC, have provided turnaround, restructuring, or crisis management services in numerous large chapter 11 cases.  AlixPartners is known for its ability to work alongside company management and key constituents during chapter 11 restructurings to develop a feasible and executable plan of reorganization.

6.      I have over 20 years of financial management experience, much of which has involved distressed companies, and I have analyzed and worked with companies in a diverse range of industries.  As an advisor, I have conducted numerous financial, valuation, and liquidation analyses for various companies, including Franchise Group, Inc., Ebix, Inc., Ditech Holding Corporation, Lonestar Resources US Inc., Sheridan Holding Company II, LLC, Paragon Offshore plc, General Motors, Tidewater, Linn Energy, Berry Petroleum, C&J Energy Services, Basic Energy Services, SH130, CGG Holdings, Gymboree, Dura Automotive, Motorcar Parts of America, Velocity Holding Company, Inc., Fisker Automotive, and Cano Health, Inc. Additionally, I have previously been qualified as an expert in U.S. bankruptcy courts and in U.S. district courts.  I have a Bachelor of Business Administration (with high distinction) from the

3

University of Michigan and a Master of Business Administration and Master of Science in Finance from the Indiana University Kelley School of Business.  I am a CFA Charterholder and a member of the CFA Institute and the Turnaround Management Association.

7.      AlixPartners was initially retained by the Debtors in February 2025 to provide financial advisory services in connection with the Debtors' review of strategic alternatives to address their capital structure and liquidity needs, which led to the Debtors' decision to file for these chapter 11 cases.  In that capacity, I, along with other members of the AlixPartners team, have been directly involved in the matters leading up to, and during, the Chapter 11 Cases.  Based on AlixPartners' work for the Debtors over the past seven months, I am familiar with the Debtors' day-to-day operations, business affairs, financial performance, and restructuring efforts.

8.      As a result of the prepetition and postpetition work AlixPartners has performed on the Debtors' behalf, AlixPartners has acquired significant knowledge of the Debtors' financial affairs, business operations, assets, and other related materials and information.

## The Financial Projections and Feasibility

9.      At the Debtors' request, AlixPartners prepared the Debtors' Financial Projections for the period from January 2025 through January 2029.  In connection with preparing the Financial Projections, my team and I reviewed the analysis and assumptions made by Management and found them to be reasonable based on our experience.  Importantly, the Financial Projections were prepared based on assumptions and data available as of the Debtors' fiscal year-end.  As provided above, the updated Financial Projections filed by the Debtors has only been updated for changes in tax analysis, which are consistent with the Debtors' current expectations and remain reasonable and appropriate under the circumstances.

10.     The Debtors expect to emerge from chapter 11 with approximately 220 to 230 retail locations, subject to final negotiations with landlords.  This is the result of months of negotiations, with the assistance of the Debtors' real estate advisor, Hilco Real Estate, LLC, ("Hilco Real Estate") and Hilco Merchant Resources, LLC's ("Hilco Merchant") assistance with respect to store closings and related sales.  In connection with these efforts, and as their go-forward lease portfolio took shape, the Debtors, with the assistance of AlixPartners and their other advisors, prepared their go-forward business plan and updated their financial projections to reflect the evolving situation.

11.     The Debtors' have implemented a number of lease savings initiatives that shaped these negotiations.  The Debtors' and Hilco Real Estate conducted a footprint assessment and site-level evaluation to identify (a) a series of sites for immediate closure and (b) certain sites with off-market lease terms.  Subsequently, the Debtors, together with Hilco Real Estate and AlixPartners, completed a lease rationalization analysis to incorporate into the business plan which analyzed store performance, operational risk factors, and both current and future lease obligations. This analysis informed the Debtors' decision to bring lease costs in line with expected revenues on a store-by-store basis to reach a sustainable margin as reflected in the Financial Projections.

12.     It is my understanding that the lease rationalization efforts are estimated to reduce total rent commitments by over $100 million over the life of the leases.  Based on my review of the Financial Projections, my discussions with Management and the Debtors' other advisors, and my review of the Debtors' business plan, I believe the Debtors will be able to substantially reduce their operating expenses and ensure that each store has a path to profitability.  Accordingly, I believe that the Debtors' go-forward business plan and lease rationalization efforts support the Financial Projections, and that the key drivers and assumptions described therein are reasonable.

13.     It is my understanding that section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.  I understand that this is commonly referred to as the requirement that the plan be "feasible."  Based on my (i) experience in distressed situations, (ii) involvement in the Debtors' operational restructuring efforts, (iii) discussions with the Debtors and their other advisors, and (iv) help in preparing and developing the business plan and Financial Projections, I believe that confirmation of the Plan is unlikely to be followed by further financial reorganization or liquidation.

14.     Upon emergence, I believe that the Reorganized Debtors will be well positioned to execute on their business plan and operate without the need for further financial restructuring. AlixPartners has been monitoring the Debtors' liquidity throughout these Chapter 11 Cases. AlixPartners has carefully sized the Exit ABL Facility to afford the Debtors enough liquidity to fund Plan distributions, manage post-emergence liquidity, and meet their obligations in the ordinary course.

15.     Moreover, I believe that the Financial Projections support the Debtors' ability to operate upon emergence because the new capital structure and cost structure will enable the Debtors to maintain a sufficient minimum cash balance and fund obligations arising under the Financial Projections and the business plan with operating cash flow and cash on hand. Accordingly, based on my understanding of the plan confirmation requirements, I believe that the Plan is feasible and satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

## The Liquidation Analysis and the "Best Interests" Test

16.      I understand that section 1129(a)(7) of the Bankruptcy Code generally requires that, with respect to each class of claims or interests that is impaired under a chapter 11 plan, each holder of a claim or interest in such class either (a) accepts the plan or (b) receives or retains under the plan property of a value that is not less than the value such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.  I understand that this requirement is commonly known as the "best interests" test.  Based on my experience in other complex chapter 11 cases and restructuring, I further understand that the best interests test applies to each non-consenting member of an impaired class and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan of reorganization.

17.      To determine whether the Plan satisfies the best interests test, AlixPartners prepared the Liquidation Analysis, which includes:  (a) the estimated cash proceeds (the "Liquidation Proceeds") that a chapter 7 trustee would generate if the chapter 11 cases were converted to cases under chapter 7 of the Bankruptcy Code on or about October 14, 2025 (the "Liquidation Date"); (b) estimated costs related to the liquidation process, such as corporate support, personnel retention and severance costs, and trustee and professional fees (the "Wind-Down Expenses"); (c) the distributions that each Class of Allowed Claims or Interests would receive from the liquidation proceeds under the priority scheme dictated by the Bankruptcy Code (the "Liquidation Distributions"); and (d) a comparison of each Holder's Liquidation Distribution to their estimated distribution under the Plan (the "Plan Distributions") that such Holders would receive if the Plan is confirmed and consummated.  Such recoveries were then compared with the estimated recoveries to Holders of Allowed Claims and Interests under the Plan.

18.    In preparing the liquidation analysis AlixPartners did not assume any responsibility for independent verification of (and did not independently verify) any of the information supplied to, discussed with, or reviewed by AlixPartners and, with the consent of the Debtors, relied on such information being complete and accurate in all material respects.  In addition, at the direction of the Debtors, AlixPartners did not make any independent evaluation or appraisal of any of the assets or liabilities (contingent, derivative, off-balance-sheet, tax-related or otherwise) of the Reorganized Debtors, nor was AlixPartners furnished with any such evaluation or appraisal. AlixPartners also assumed, with the Debtors' consent, that the final form of the Plan does not differ in any respect material to its analysis from the final draft that AlixPartners reviewed.

19.    I oversaw the preparation of the Liquidation Analysis and worked closely with a team of AlixPartners professionals in its development.  The Liquidation Analysis was completed following due diligence performed by the AlixPartners team, which included a review of the Debtors' books and records and discussions with the Debtors' management.  The Liquidation Analysis is based on the estimated value of the Debtors' assets and liabilities based on their book value as of May 24, 2025 as a starting point, or more recent values where available.  In addition, the Liquidation Analysis incorporates various estimates and assumptions that I believe are reasonable under the circumstances and are customarily used in chapter 11 cases similar to the Debtors', including the projected costs associated with the administration of the estate and the support required to wind down the Debtors' operations in a hypothetical conversion to a chapter 7 liquidation.

20.    Estimated Plan recoveries were determined, where applicable, based on the valuation analysis prepared by PJT Partners, LP, which is attached to the Disclosure Statement as

Exhibit C (the "Valuation Analysis").  Projected recoveries under the Plan and the results of the Debtors' Liquidation Analysis for all Holders of Claims and Interests are as follows:

| Class | Claims and Interests | Estimated Plan Recovery[4] | Estimated Liquidation Recovery |
|---|---|---|---|
| Class 1 | Other Secured Claims | 100% | 100% |
| Class 2 | Other Priority Claims | N/A | N/A |
| Class 3 | ABL Facility Claims | 100% | 100% |
| Class 4 | Cayman Notes Claims | 100% | 0% |
| Class 5 | Intercompany Note Claims | 100% | 0% |
| Class 6 | Term Loan Claims | 100% | 0% |
| Class 7 | Senior Secured Notes Claims | 100% | 0% |
| Class 8 | Exchange Notes Claims | 100% | 0% |
| Class 9 | General Unsecured Claims | ~2% | 0% |
| Class 10 | Intercompany Claims | None | None |
| Class 11 | Intercompany Interests | None | None |

21.    Comparing the range of projected recoveries under the Liquidation Analysis to the estimated Plan recoveries demonstrates that with respect to each Impaired Class of Claims or Interests, each Holder of a Claim or Interest of such Class will receive or retain under the Plan property of a value, as of the Effective Date, that equals or exceeds the value such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  In particular,

---

[4]    For the avoidance of doubt, estimated recovery percentages under the Plan for Class 4 Cayman Notes Claims, Class 5 Intercompany Note Claims, Class 6 Term Loan Claims, Class 7 Senior Secured Notes Claims, and Class 8 Exchange Note Claims have been estimated at 100% of the Allowed Secured Claim in the form of Reorganized Equity using the midpoint value provided in the Valuation Analysis such that such Claims are impaired on account of receiving Reorganized Equity in lieu of Cash.

Holders of Class 1 and Class 3 Claims are estimated to recover in full under the Plan, Holders of Class 4, Class 5, Class 6, Class 7, and Class 8 Claims are estimated to receive a 100% recovery on behalf of their Allowed Secured Claims in the form of Reorganized Equity under the Plan, and the Holders of General Unsecured Claims are projected to recover approximately 2% under the Plan, while such Holders would recover nothing in a hypothetical chapter 7 liquidation.

22.    Accordingly, I believe that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated:  September 24, 2025
New York, New York

/s/ Jeffrey Kopa
Jeffrey Kopa
Partner & Managing Director
AlixPartners, LLP

<u>**Exhibit A**</u>

**Financial Projections**

# FINANCIAL PROJECTIONS

## Introduction to Financial Projections

As a condition to Confirmation, the Bankruptcy Code requires, among other things, the Bankruptcy Court to find that entry of a Confirmation Order is not likely to be followed by either a liquidation or the need to further reorganize the Debtors or any successor to the Debtors.  In accordance with this condition and in order to assist each Holder of a Claim in determining whether to vote to accept or reject the Plan, the Debtors' management team ("Management"), with the assistance of its advisors, developed financial projections (the "Financial Projections") to support the feasibility of the Plan.[1]  The Debtors prepared the Financial Projections presented herein to show the next five years (2025-2029) of projected financial statements as of the Debtors' fiscal year-end on January 25, 2025.

The Financial Projections were prepared in good faith by Management, with the assistance of its advisors, and are based on a number of assumptions made by Management, within the bounds of Management's knowledge of the Debtors' business and operations, with respect to the future performance of the Debtors' operations.  Forward-looking statements in these projections include the intent, belief, or current expectations of the Debtors and members of its Management with respect to the timing of, completion of, and scope of the current restructuring, the Plan, the Debtors' strategic business plan, bank financing, debt and equity market conditions, and the Debtors' future liquidity, as well as the assumptions upon which such statements are based.  Although Management has prepared the Financial Projections in good faith and believes the assumptions to be reasonable, it is important to note that the Debtors can provide no assurance that such assumptions will be realized.  Because future events and circumstances may well differ from those assumed and unanticipated events or circumstances may occur, the Debtors expect that the actual and projected results will differ and the actual results may be materially greater or less than those contained in the Financial Projections herein and from those contemplated by such forward-looking statements.  No representations can be made as to the accuracy of the Financial Projections or the Debtors' ability to achieve the projected results.  Therefore, the Financial Projections may not be relied upon as a guarantee or as any other form of assurance as to the actual results that will occur.  The inclusion of the Financial Projections herein should not be regarded as an indication that the Debtors considered or consider the Financial Projections to reliably predict future performance.  Accordingly, in deciding whether to vote to accept or reject the Plan, creditors should review the Financial Projections in conjunction with a review of the risk factors set forth in the Disclosure Statement and the assumptions and risks described herein, including all relevant qualifications and footnotes.

The Debtors believe that the Plan meets the feasibility requirements set forth in section 1129(a)(11) of the Bankruptcy Code, as confirmation of the Plan is not likely to be followed by a liquidation or the need for further financial reorganization of the Debtors or any successor under the Plan.  In connection with the planning and development of the Plan and for the purposes of determining whether the Plan would satisfy this feasibility standard, the Debtors analyzed their ability to satisfy their financial obligations while maintaining sufficient liquidity and capital resources.

---

[1]   Capitalized terms used but not defined herein have the meanings set forth in the *Disclosure Statement Relating to the Joint Plan of Reorganization of At Home Group Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 542] (as may be amended, modified, and/or supplemented from time to time, the "Disclosure Statement"), to which the Financial Projections are attached as Exhibit B, or in the *Joint Plan of Reorganization of At Home Group Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 541] (as may be amended, modified, and/or supplemented from time to time, the "Plan").

The Financial Projections were not prepared with a view toward compliance with published guidelines of the United States Securities and Exchange Commission or the American Institute of Certified Public Accounts for preparation and presentation of prospective financial information.  An independent auditor has not examined, compiled, or performed any procedures with respect to the prospective financial information contained in these Financial Projects and accordingly, it does not express an opinion or any other form of assurance on such information or its attainability.  The Debtors' independent auditor assumes no responsibility for, and denies any association with, the prospective financial information.

The Debtors do not intend to and disclaim any obligation to:  (a) furnish updated Financial Projections to Holders of Claims or Interests prior to the Effective Date or to any other party after the Effective Date, except as required by the Plan; (b) include any such updated information in any documents that may be required to be filed with the Securities and Exchange Commission; or (c) otherwise make such updated information publicly available.

**Assumptions of the Financial Projections**

The Financial Projections are based on, but not limited to, factors such as industry performance, general business, economic, competitive, regulatory, market, and financial conditions, as well as the assumptions detailed below.  Many of these factors and assumptions are beyond the control of the Debtors and do not take into account the uncertainty and disruptions of business that may accompany an in-court restructuring.  Accordingly, the assumptions should be reviewed in conjunction with a review of the risk factors set forth in the Disclosure Statement.

- **Forecast Methodology:**  In light of the form of distributions contemplated by the Plan, the Financial Projections were developed on a consolidated basis rather than on a legal entity basis. The Debtors' projected financial statements represent a consolidated view of the Debtors' long-range business plan ("LRP") developed by Management using a store level forecast across the United States and the Debtors' e-commerce sales through their online website.  In creating the LRP, which outlines projected operating and financial performance for the next five fiscal years, such that each fiscal year closes at the end of January of the year for which the fiscal year is named,[2] management analyzed various factors and relevant industry metrics which included, but are not limited to:  (i) projected store count; (ii) projected store level unit economics and revenue (*e.g.*, average unit revenue, unit per transaction, store traffic, and traffic conversion rate); (iii) projected store level operating expenses; (iv) projected corporate operating expenses, (v) maintenance and growth capital expenditures; and (vi) various business initiatives, each of which may contribute to revenue growth, operating efficiency, cost reductions, or inventory efficiency.

---

[2]    For example, the Company's fiscal year 2025 ended on January 25, 2025.

The Financial Projections assume 28 store locations will cease contributing to sales by the end of July 2025.[3]  The total number of stores that will ultimately be closed is dependent upon lease negotiations.

The Financial Projections have been prepared using accounting policies that are consistent with the Debtors' historical financial statements.  Upon emergence from chapter 11, the Debtors anticipate that the Reorganized Debtors will implement "fresh start" reporting pursuant to Accounting Standards Codification ("ASC") Topic 852, "Reorganization."  "Fresh start" reporting requires that the reorganization value of the emerging entity be allocated to all of the entity's assets and liabilities in accordance with the guidance in ASC Topic 805, "Business Combinations."  Any portion of the reorganization value not attributable to specific tangible or identifiable intangible assets or liabilities of the emerging entity is required to be reported as goodwill.  The Financial Projections may not reflect all adjustments necessary to implement "fresh start" reporting.

- **Projection Assumptions with Respect to the Income Statement:**

  _Revenue Forecast_:  The Debtors primarily operate through 260 brick-and-mortar retail stores, as of the Petition Date, and their e-commerce sales channels, and developed revenue forecasts by projecting, among other key drivers, future store openings and closings, store comparable performance, omnichannel e-commerce expansion, new loyalty program rollout, and product mix and margin.  The Debtors considered industry trends and target customer purchasing habits within the U.S. home furnishings and décor market.

  _Gross Profit_:  The Debtors' consolidated gross profit is forecasted based on cost of sales expenses projected for product sales margin, distribution center expenses, and store occupancy costs across the brick-and-mortar fleet.  Cost of sales forecasts are consistent with historical cost trends within each respective retail location and distribution center.  Product sales margin incorporates, among other key variables, product cost, damages, outbound freight, shrink, initial markup expansion opportunities, and projected tariff impacts.  Other efficiency initiatives were considered for retail store sizing and distribution center operations.

  _Selling, General & Administrative Expenses ("SG&A")_:  The Debtors' consolidated SG&A expenses are commensurate with forecasted store footprint, headquarter staffing and departmental scope, information technology requirements, and distribution operations.

  _Depreciation and Amortization_:  The Debtors' consolidated depreciation and amortization is forecasted based on anticipated depreciation and amortization on current book values and current accounting methodologies.  Additionally, depreciation expense recognized in fiscal years 2026 through 2030 includes amounts related to projected capital expenditures expected to occur in those

---

[3]  The Financial Projections are based on a business plan that anticipated closing 28 stores by the end of July 2025.  As of date hereof, there are 31 stores on the initial closing list.  _See Final Order (I) Authorizing the Debtors to Assume the Agency Agreement, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Modifying Customer Programs at the Closing Stores, and (IV) Granting Related Relief_ [Docket No. 345] (Ex. A); _Notice of Removal of Closing Stores from the Store Closing List_ [Docket No. 303]; _Notice of Filing of Additional Store Closing List_ [Docket No. 369]; _Notice of Removal of Closing Stores from the Store Closing List_ [Docket No. 542]; _Notice of Filing of Additional Store Closing List_ [Docket No. 554]; and _Notice of Filing of Additional Store Closing List_ [Docket No. 585].  These changes do not materially change the Financial Projections set forth herein.

years.  Depreciation and amortization schedules have not been adjusted for fresh start accounting and could vary pending final accounting analysis of the restructuring.

_Stock Based Compensation & Other_:  The Debtors forecast stock-based compensation ("SBC") and other non-core or non-cash expenses from fiscal year 2026 onwards.  SBC and other non-core or non-cash expenses are generally consistent with historical trends and forecasted expense recognition.

_Cash Taxes_:  The Debtors forecast cash taxes from fiscal year 2026 onwards, as taxable income is generated.  The projections account for the potential tax obligations as a result of consummating the plan, and the pro forma Company structure upon emergence from Chapter 11.  The cash taxes are an estimate after effectuating the new corporate structure and the resulting federal and state tax attributes of the Company at emergence.  These amounts are subject to change and could vary pending final tax analysis of the transaction.

- **Projection Assumptions with Respect to the Cash Flow Statement and Capital Structure:**

  _Cash_:  Beginning cash balances reflect the Debtors' projected consolidated balance sheet cash at an illustrative effective date of October 25, 2025, reflecting the Debtors' estimated outside emergence date from chapter 11.  Such amounts may differ as of the Effective Date depending on the actual results associated with several assumptions, including the Debtors' actual cash balance immediately prior to the Effective Date, actual and projected remaining cash flows and expenses during the bankruptcy, and other related amounts.

  _Debt_:  The Financial Projections are illustrative and inclusive of a proposed Exit ABL Facility on substantially the same terms as the existing prepetition ABL Loans, drawn in the amount of approximately $255 million upon emergence, which represents the outstanding prepetition balance less any projected liquidation proceeds resulting from the sale of ABL priority collateral over the duration of these Chapter 11 Cases.  However, the existence, terms, conditions, commitment amount, and placement of the Exit ABL Facility are subject to ongoing negotiation and availability.

  _Working Capital_:  The Debtors' consolidated working capital has been forecasted based on working capital needs projected at the store and corporate level, consistent with historical costs and projected needs within each respective retail location and/or distribution center.

  _Capital Expenditures_:  The Debtors' consolidated capital expenditures are forecasted based on projected capital expenditures at each store and at the corporate level, as presented in the Debtors' long-term forecasts.  Projected capital expenditures include required maintenance capital expenditures and growth capital expenditures associated with the strategic initiatives in the LRP projections.

*[Financial Projections follow]*

## Projected P&L and Free Cash Flow

| *$ in thousands* | FY2026Q4[1] | FY2027 | FY2028 | FY2029 | FY2030 |
|---|---|---|---|---|---|
| **Financial Performance** | | | | | |
| **Net Sales** | $ 508,807 | $ 1,719,000 | $ 1,848,979 | $ 1,984,243 | $ 2,128,421 |
| *% YoY* | //////// | //////// | *7.6%* | *7.3%* | *7.3%* |
| **Gross Profit** | $ 154,305 | $ 471,356 | $ 553,231 | $ 654,082 | $ 724,299 |
| *Gross Profit Margin* | *30.3%* | *27.4%* | *29.9%* | *33.0%* | *34.0%* |
| **SG&A** | $ (119,241) | $ (455,232) | $ (465,713) | $ (485,757) | $ (508,007) |
| *SG&A %* | *23.4%* | *26.5%* | *25.2%* | *24.5%* | *23.9%* |
| **Operating Income** | $ 35,064 | $ 16,123 | $ 87,518 | $ 168,325 | $ 216,292 |
| (+) Depreciation & Amortization | 23,270 | 86,828 | 79,634 | 79,274 | 80,620 |
| (+) SBC / Other | 4,090 | 18,312 | 18,693 | 20,077 | 20,615 |
| **Adjusted EBITDA** | $ 62,423 | $ 121,263 | $ 185,845 | $ 267,676 | $ 317,528 |
| *EBITDA Margin* | *12.3%* | *7.1%* | *10.1%* | *13.5%* | *14.9%* |
| ( - ) Capex | (12,225) | (39,855) | (61,755) | (63,455) | (55,455) |
| ( - ) Cash Taxes | - | (5,353) | (4,929) | (35,152) | (59,637) |
| +/- Changes in WC | 56,098 | (28,029) | 38,650 | (10,636) | 37,063 |
| **Unlevered Free Cash Flow** | $ 106,296 | $ 48,026 | $ 157,810 | $ 158,433 | $ 239,499 |
| ( - ) Cash Interest | (2,959) | (10,307) | (6,064) | (1,418) | (1,350) |
| ( - ) Mandatory Principal Repayment | - | - | - | - | - |
| **Levered Free Cash Flow** | $ 103,337 | $ 37,719 | $ 151,746 | $ 157,015 | $ 238,149 |

*(1) FY2026 illustratively reflects performance beginning in Q4 (10/25/2025), the Debtors' estimated outside exit date from chapter 11*

## Projected Cash Flow Statement

| *$ in thousands* | FY2026Q4[1] | FY2027 | FY2028 | FY2029 | FY2030 |
|---|---|---|---|---|---|
| **Cash Flow** | | | | | |
| **Net Income** | $ 32,104 | $ 463 | $ 76,524 | $ 131,755 | $ 155,306 |
| ( + ) Depreciation & Amortization | 23,270 | 86,828 | 79,634 | 79,274 | 80,620 |
| ( + ) Other | 4,090 | 18,312 | 18,693 | 20,077 | 20,615 |
| **Change in Working Capital** | | | | | |
| Accounts Receivable | 5,531 | (335) | (1,112) | (1,201) | (1,231) |
| Inventory | 78,216 | (53,813) | 36,211 | (15,383) | 26,396 |
| Accounts Payable | (27,649) | 26,119 | 3,551 | 5,949 | 11,898 |
| **Cash Flow from Operating Activities** | $ 115,562 | $ 77,574 | $ 213,501 | $ 220,470 | $ 293,604 |
| **Investing Activity** | | | | | |
| Capital Expenditures | (12,225) | (39,855) | (61,755) | (63,455) | (55,455) |
| **Cash Flow from Investing Activities** | (12,225) | (39,855) | (61,755) | (63,455) | (55,455) |
| **Financing Activity** | | | | | |
| New Borrowings | - | - | - | - | - |
| Net Revolver Draw (Repayment)[2] | (103,337) | (37,719) | (133,215) | - | - |
| **Cash Flow from Financing Activities** | (103,337) | (37,719) | (133,215) | - | - |
| **Net Change in Cash** | $ 0 | $ (0) | $ 18,531 | $ 157,015 | $ 238,149 |
| Beginning Book Cash Balance | $ 10,000 | $ 10,000 | $ 10,000 | $ 28,531 | $ 185,545 |
| Net Change in Cash | 0 | (0) | 18,531 | 157,015 | 238,149 |
| **Ending Book Cash Balance** | $ 10,000 | $ 10,000 | $ 28,531 | $ 185,545 | $ 423,694 |

*(1) FY2026 illustratively reflects performance beginning in Q4 (10/25/2025), the Debtors' estimated outside exit date from chapter 11*
*(2) Assumes discretionary deleveraging monthly based on available amounts in excess of an illustrative $10.0 million minimum cash balance*

## Summary Capital Structure

| *$ in thousands* | FY2026 | FY2027 | FY2028 | FY2029 | FY2030 |
|---|---|---|---|---|---|
| **Rolling Capital Structure** | | | | | |
| New Revolver[1] | 170,934 | 133,215 | - | - | - |
| Gross Debt[1] | $ 170,934 $ | 133,215 $ | - $ | - $ | - |
| (-) Cash | (10,000) | (10,000) | (28,531) | (185,545) | (423,694) |
| Net Debt | $ 160,934 $ | 123,215 $ | (28,531) $ | (185,545) $ | (423,694) |

*(1) Assumes discretionary deleveraging monthly based on available amounts in excess of an illustrative $10.0 million minimum cash balance*

## Select Balance Sheet and Cash Flow Items[1]

| *$ in thousands* | FY2026Q4[2] | FY2027 | FY2028 | FY2029 | FY2030 |
|---|---|---|---|---|---|
| **Net Working Capital** | | | | | |
| Accounts Receivable | 11,260 | 11,595 | 12,707 | 13,908 | 15,139 |
| Inventory | 407,319 | 461,132 | 424,921 | 440,305 | 413,909 |
| Accounts Payable | 66,925 | 93,045 | 96,595 | 102,544 | 114,442 |
| Net Working Capital | $ 351,653 $ | 379,682 $ | 341,033 $ | 351,668 $ | 314,606 |
| Change in Net Working Capital | (56,098) $ | 28,029 | (38,650) $ | 10,636 | (37,063) |
| | | | | | |
| Fixed Assets | $ 517,250 $ | 451,965 $ | 415,393 $ | 379,498 $ | 333,717 |

*(1) Figures shown are prior to any chapter 11-related adjustments, if applicable*
*(2) FY2026 illustratively reflects performance beginning in Q4 (10/25/2025), the Debtors' estimated outside exit date from chapter 11*

6

**Exhibit B**

**Liquidation Analysis**

## LIQUIDATION ANALYSIS

**Introduction to Liquidation Analysis**

Under what is often called the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of an allowed claim or interest that does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To demonstrate that the Plan[1] satisfies the best interests of creditors test, the Debtors, with the assistance of their restructuring advisors, AlixPartners, LLC, have prepared the hypothetical liquidation analysis (the "Liquidation Analysis"), which represents the Debtors' reasonable and good faith estimate of the cash proceeds, net of liquidation-related costs, which would be available for distribution to the Holders of Claims and Interests if the Debtors' assets were to be liquidated pursuant to a chapter 7 proceeding.  This Liquidation Analysis is based upon certain assumptions discussed in the Disclosure Statement and accompanying notes to the Liquidation Analysis.

The Liquidation Analysis sets forth an estimated range of recovery values for each Class of Claims and Interests upon disposition of assets pursuant to a hypothetical chapter 7 liquidation.[2]  As illustrated by the Liquidation Analysis, Holders of Claims in certain Unimpaired Classes that would receive a full recovery under the Plan would receive less than a full recovery in a hypothetical liquidation.  Additionally, Holders of Claims or Interests in Impaired Classes would receive a lower recovery in a hypothetical liquidation than they would under the Plan.  Further, no Holder of a Claim or Interest would receive or retain property under the Plan of a value that is less than such Holder would receive in a chapter 7 liquidation.  Accordingly, and as set forth in greater detail below, the Debtors believe that the Plan satisfies the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code.

**Statement of Limitations**

THIS ILLUSTRATIVE LIQUIDATION ANALYSIS PRESENTED HEREIN HAS BEEN PREPARED SOLELY FOR THE PURPOSES DESCRIBED ABOVE AND MAY NOT BE USED FOR ANY OTHER PURPOSE.

The preparation of a liquidation analysis is an uncertain process involving the use of estimates and assumptions that, although considered reasonable by the Debtors based upon their business judgment and input from their advisors, are inherently subject to significant business, economic, and competitive risks, uncertainties and contingencies, most of which are difficult to predict and many of which are beyond the control of the Debtors, their management, and their advisors.   Inevitably, some assumptions in the

---

[1]   Capitalized terms used but not defined herein have the meanings set forth in the *Disclosure Statement Relating to the Joint Plan of Reorganization of At Home Group Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 542] (as may be amended, modified, and/or supplemented from time to time, the "Disclosure Statement"), to which the Liquidation Analysis is attached as Exhibit D, or in the *Joint Plan of Reorganization of At Home Group Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 541] (as may be amended, modified, and/or supplemented from time to time, the "Plan").

[2]   The Liquidation Analysis accounts for cash proceeds, net of liquidation-related costs for both encumbered and unencumbered assets.  Any such unencumbered assets are not expected to provide any recovery to unsecured creditors after satisfying applicable Wind Down Expenses and DIP Facility claims.

Liquidation Analysis would not materialize in an actual chapter 7 liquidation and unanticipated events and circumstances could materially affect the ultimate results in an actual chapter 7 liquidation.  The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code.  The Liquidation Analysis is not intended and should not be used for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan.  The underlying financial information in the Liquidation Analysis and values stated herein have not been subject to any review, compilation, or audit by any independent accounting firm.  In addition, various liquidation decisions upon which certain assumptions are based are subject to change.  As a result, the actual amount of claims against the Debtors' estates could vary significantly from the estimates stated herein, depending on the nature and amount of claims asserted during the pendency of the chapter 7 cases.  Similarly, the value of the Debtors' assets in a liquidation scenario is uncertain and could vary significantly from the values set forth in the Liquidation Analysis.

The Liquidation Analysis was prepared for the sole purpose of generating a reasonable and good faith estimate of the recoveries that would result if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code and is not intended and should not be used for any other purpose.  This Liquidation Analysis does not represent values applicable in the context of the Restructuring Transactions.  Nothing contained in this Liquidation Analysis is intended as or constitutes a concession or admission for any purpose other than the presentation of a hypothetical liquidation analysis to illustrate the substantial loss in value the Debtors' stakeholders will suffer if the Restructuring Transactions are not consummated, and the Debtors are forced to convert their Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.  The Liquidation Analysis does not include estimates for:  (i) the tax consequences, either foreign or domestic, that may be triggered upon the liquidation and sale of assets or (ii) certain claims that may be entitled to priority under the Bankruptcy Code, including administrative priority claims under sections 503(b) and 507(b) of the Bankruptcy Code.  More specific assumptions are detailed in the notes below.  ACCORDINGLY, NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS OF A LIQUIDATION OF THE DEBTORS WOULD OR WOULD NOT, IN WHOLE OR IN PART, APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED HEREIN.  THE ACTUAL LIQUIDATION VALUE OF THE DEBTORS IS SPECULATIVE AND RESULTS COULD VARY MATERIALLY FROM ESTIMATES PROVIDED HEREIN.

In preparing the Liquidation Analysis, the Debtors and their advisors estimated Allowed Claims based upon a review of the Debtors' financial statements to account for other known liabilities, as necessary.  In addition, the Liquidation Analysis includes estimates for Claims not currently asserted in these Chapter 11 Cases, but which could be asserted and allowed in a chapter 7 liquidation, including unpaid chapter 11 Administrative Claims and chapter 7 administrative claims such as wind down costs and trustee fees.  To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing this Liquidation Analysis.  Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan.  NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS.  THE ACTUAL

AMOUNT OF ALLOWED CLAIMS IN THESE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

THE DEBTORS RESERVE THE RIGHT TO SUPPLEMENT, MODIFY, OR ADJUST ANY PART OF THE ILLUSTRATIVE LIQUIDATION ANALYSIS, INCLUDING A CHANGE OF THE UNDERLYING ASSUMPTIONS AND ANALYSIS SET FORTH HEREIN.

**Basis of Presentation**

*Chapter 7 Liquidation*:  The Liquidation Analysis has been prepared assuming that the Debtors converted their current chapter 11 cases to cases under chapter 7 of the Bankruptcy Code on or about October 14, 2025 (the "Liquidation Date").  It is assumed that on the Liquidation Date, the Bankruptcy Court would appoint a chapter 7 trustee (the "Trustee") to oversee the liquidation of the Debtors' estates, during which time all of the assets of the Debtors (the "Liquidating Entities") would be sold and the cash proceeds, net of liquidation-related costs, would then be distributed to creditors in accordance with applicable law.

*Professionals Involved in the Chapter 7 Cases*:  This Liquidation Analysis assumes that as part of the chapter 7 cases, the chapter 7 trustee would choose to retain certain professionals, including counsel, financial advisors, and/or investment bankers, among others, pursuant to section 327 of the Bankruptcy Code to provide expertise and assistance in the liquidation of the Debtors, in lieu of the professionals and advisors retained by the Debtors in these Chapter 11 Cases.

*Timing Considerations*:  The Liquidation Analysis has been prepared assuming that these Chapter 11 Cases convert to chapter 7 on the Liquidation Date.  The Liquidation Analysis utilizes the book values of the Debtors' assets and liabilities as of May 24, 2025 as a starting point, or more recent values where available. The Debtors' management team reasonably believes that the May 24, 2025 book value of assets and certain liabilities are a proxy for such book values as of the Liquidation Date.  The Debtors have also projected cash balances, merchandise inventory, ABL Facility Claims, and the DIP Facility claim balances forward to the Liquidation Date.  This Liquidation Analysis assumes operations of the Liquidating Entities will cease and the related individual assets will be sold in a rapid sale under an approximately four-month store liquidation process (the "Liquidation Timeline") under the direction of the Trustee, utilizing the Debtors' resources and third-party advisors, with a subsequent orderly wind down of the Debtors' estates.  There can be no assurance that the liquidation would be completed in a limited time frame, nor is there any assurance that the recoveries assigned to the assets would in fact be realized.  Under section 704 of the Bankruptcy Code, a trustee must, among other duties, collect and convert the property of the estate as expeditiously possible (generally at distressed prices), consistent with the best interests of parties-in-interest.  The Liquidation Analysis is also based on the assumptions that:  (i) the Debtors have continued access to cash collateral during the course of the Liquidation Timeline to fund wind down expenses and (ii) the Debtors will pay store expenses (*e.g.*, rent, utilities, and personnel expenses), accounting, treasury, information technology, and other management services needed to wind down the estates continue.

*Presentation on Consolidated Basis*:  This Liquidation Analysis was analyzed on a legal entity basis but is presented on a consolidated basis for ease of presentation and because there is no material difference to the recoveries of any Class of Claims or Interests under either methodology.

**Conclusion**

The Debtors have determined, as summarized in the following analysis, that confirmation of the Plan will provide creditors with a recovery that is not less than what they would otherwise receive in connection with a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

*[Liquidation Analysis follows]*

| Liquidation Analysis - Summary of Recoveries from Debtors | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Recovery % | | Recovery $ | | Recovery $ | |
| *In $Thousands* | Note: | Book Value | Low | High | Low | | High | |
| Cash and Cash Equivalents | [A] | $ 51,058 | 100.0% | 100.0% | $ | 51,058 | $ | 51,058 |
| Accounts Receivable | [B] | 31,768 | 74.4% | 89.0% | | 23,649 | | 28,260 |
| Inventory | [C] | 500,483 | 94.6% | 104.6% | | 473,457 | | 523,505 |
| Prepaid Expenses | [D] | 32,792 | 12.3% | 21.7% | | 4,023 | | 7,102 |
| Property, Plant and Equipment | [E] | 564,296 | 5.1% | 8.2% | | 28,925 | | 46,549 |
| Other Non-Current Assets | [F] | 1,257,333 | 0.3% | 0.9% | | 3,779 | | 11,338 |
| **Total Assets** | | **$ 2,437,730** | **24.0%** | **27.4%** | **$** | **584,890** | **$** | **667,812** |
| | | | | | | | | |
| **Wind-Down Expenses** | | | | | | | | |
| Wind-Down Expenses | [G] | | | | $ | 88,603 | $ | 93,578 |
| Wind-Down Expenses Recovery | | | | | | 88,603 | | 93,578 |
| *Wind-Down Recovery %* | | | | | | *100.0%* | | *100.0%* |
| | | | | | | | | |
| **Net Proceeds from Liquidation** | | | | | **$** | **496,287** | **$** | **574,233** |
| | | | | | | | | |
| **ABL Facility Claims** | | | | | $ | 390,452 | $ | 390,452 |
| ABL Facility Claims Recovery | [H] | | | | | 390,452 | | 390,452 |
| *ABL Facility Claims Recovery %* | | | | | | *100.0%* | | *100.0%* |
| | | | | | | | | |
| **Tranche A DIP Loan Claims** | | | | | $ | 227,107 | $ | 227,107 |
| Tranche A DIP Loan Recovery | [I] | | | | | 105,835 | | 183,781 |
| *Tranche A DIP Loan Recovery %* | | | | | | *46.6%* | | *80.9%* |
| | | | | | | | | |
| **Tranche B DIP Loan Claims** | | | | | $ | 406,860 | $ | 406,860 |
| Tranche B DIP Loan Recovery | [J] | | | | | - | | - |
| *Tranche B DIP Loan Recovery %* | | | | | | *0.0%* | | *0.0%* |
| | | | | | | | | |
| **First Lien Claims** | | | | | $ | 1,202,765 | $ | 1,202,765 |
| First Lien Recovery | [K] | | | | | - | | - |
| **First Lien Deficiency Claims** | | | | | **$** | **1,202,765** | **$** | **1,202,765** |
| *First Lien Recovery %* | | | | | | *0.0%* | | *0.0%* |
| | | | | | | | | |
| **General Unsecured Claims** | | | | | $ | 2,022,893 | $ | 1,944,947 |
| General Unsecured Recovery | [L] | | | | | - | | - |
| *General Unsecured Recovery %* | | | | | | *0.0%* | | *0.0%* |
| | | | | | | | | |
| **Total Creditor Recovery** | | | | | **$** | **496,287** | **$** | **574,233** |

4

## NOTES TO LIQUIDATION ANALYSIS

Asset book values and unsecured trade claims shown above are as of May 24, 2025 unless otherwise noted.

[A] _Cash and Cash Equivalents_:  The cash balance is a projected balance as of the Liquidation Date. Recovery is estimated to be 100% of the pro forma balance as of the Liquidation Date on both a lower and higher recovery basis.

[B] _Accounts Receivable_:  These assets are primarily composed of credit card receivables, gift card receivables, and other trade receivables.  Recovery estimates for accounts receivable are made at the sub-classification level, and take certain factors into consideration, such as counterparty, aging, concentration, and potential offsets.  The recovery estimates by category result in a blended recovery of 74.4% to 89.0%.

[C] _Inventory_:  Eligible on-hand inventory as of the Liquidation Date is assumed to result in a lower recovery estimate of 94.6% and a higher recovery estimate of 104.6%.  This level of recovery has been informed by the net orderly liquidation value estimate contained within the Debtors' most recent inventory appraisal.  The estimated recovery also assumes that "equity bids" are received from liquidators and that the recoveries are net of store related liquidation expenses, including items such as payroll and rent.

[D] _Prepaid Expenses_:  These assets consist of prepaid items that may be irrecoverable in the event of a liquidation, including prepaid maintenance, rent, insurance, taxes, and other expenses that are amortized over the applicable rental, policy term, or other period.  On a blended basis, a 12.3% to 21.7% recovery has been estimated for these prepaid amounts, on a lower and a higher recovery basis, respectively.

[E] _Property, Plant and Equipment ("PP&E")_:  The net book value of PP&E consists of land, buildings, leasehold improvements, furniture, fixtures, equipment, computer equipment and applications, and vehicles.  Recovery was estimated by asset type.  For land and buildings, appraised values were used to inform the recovery range.  No recovery has been assigned to construction-in-progress and financing leases of right-of-use assets, as these assets are not owned by the Debtors.  In total, the implied recovery of PP&E relative to net book value is 5.1% on a lower recovery estimate and 8.2% on a higher recovery estimate.

[F] _Other Non-Current Assets_: These assets include the Debtors' investments in subsidiaries, goodwill, and intangible assets, including the Debtors' trade name assets.  For purposes of the Liquidation Analysis, no value has been assigned to the Debtors' investment in subsidiaries and goodwill.  The value of trade names was estimated by examining actual trade name transactions that resulted from the liquidation of other retailers.  The value of the trade names was estimated to be $3.8 million to $11.3 million on a lower and higher recovery basis, respectively.  On a blended basis, the recovery is approximately 0.3% to 0.9% of net book value on a lower and higher recovery basis, respectively.

[G] _Wind-Down Expenses_:  Chapter 7 wind-down expenses consist of priority liabilities, estimated at approximately $43.8 million, wind-down expenses of approximately $12.8 million, and a 3% trustee fee and 3% chapter 7 legal/professional fees, estimated at a combined trustee and legal/professional fee of $32.0 million to $37.0 million.  Wind-down expenses exclude store-related wind-down expenses which have been factored into the recovery rates assigned to inventory above.

[H] _ABL Facility Claims_:  These claims represent the aggregate principal amount outstanding under the ABL Credit Agreement, plus any accrued and unpaid interest and fees, and outstanding letters of credit as of the Liquidation Date.  The Liquidation Analysis provides a 100% recovery on these claims on both a lower and higher recovery estimate.

[I] *Tranche A DIP Loan Claims*:  These claims represent the estimated Tranche A DIP Loan balance as of the Liquidation Date, including any accrued and unpaid interest and fees.  The Debtors estimate a recovery of 46.6% to 80.9% on these claims.  Per the DIP Credit Agreement, all such amounts shall be applied first, to the amount of the outstanding DIP Obligations with respect to the Tranche A DIP Loan Claims until the DIP Obligations in respect to the Tranche A DIP Loan Claims are paid and satisfied in full, and second, to the amount of the outstanding DIP Obligations with respect to the Tranche B DIP Loans.

[J] *Tranche B DIP Loan Claims*:  These claims represent the estimated Tranche B DIP Loan balance as of the Liquidation Date, including any accrued and unpaid interest and fees and the $200 million Cayman Notes roll-up amount.  The Debtors estimate a recovery of 0% to 0% with respect to the Tranche B DIP Loan Claims.

[K] *First Lien Claims*:  These claims represent the projected balances of the Senior Secured Notes, Term Loans, and Exchange Notes, including accrued interest and fees, as of the Liquidation Date under the applicable debt documentation.  The Liquidation Analysis provides a 0% recovery on these claims on both a lower and higher recovery basis.  This Liquidation Analysis assumes that all claims associated with the Cayman Notes are rolled-up into the Tranche B DIP Loan and there would not be any First Lien Claims associated with the Cayman Notes.

[L] *General Unsecured Claims*:  The estimate of General Unsecured Claims is based on the anticipated amount that will be included in the Debtors' schedules of assets and liabilities.  This estimate includes first lien deficiency claims and Tranche A and Tranche B deficiency claims.  This estimate does not include any General Unsecured Claims for which the Claim amount is uncertain as of the date of this Liquidation Analysis.  This estimate also does not include potential unsecured damages claims resulting from the rejection of any Executory Contracts or Unexpired Leases.  Additional General Unsecured Claims may be asserted against the Debtors prior to the applicable deadlines for filing proofs of Claim or Interests in these Chapter 11 Cases, which, as of the date of this Liquidation Analysis, have not passed.  The Debtors estimate a 0% recovery on these claims.